DYKE ᴇᴛ ᴀʟ. *v.* TAYLOR IMPLEMENT
MANUFACTURING CO., INC.

No. 149.   Argued January 18, 1968.—Decided May 20, 1968.

*Michael H. Gottesman* argued the cause for petitioners. With him on the briefs were *Bernard Kleiman, Elliot Bredhoff, George H. Cohen, George Longshore,* and *Tom J. Taylor.*

*Allen H. Carter* argued the cause for respondent. With him on the brief were *Foster D. Arnett* and *S. Randolph Ayres.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Petitioners, Wayne Dyke, Ed McKinney, and John Blackwell, were found guilty of criminal contempt by the Chancery Court of McMinn County, Tennessee. All three were given the maximum sentence authorized by statute, 10 days in jail and a $50 fine.[1] The Tennessee Supreme Court affirmed,[2] rejecting contentions that the convictions violated the Federal Constitution because a jury trial was denied[3] and because testimony concerning

---

[1] Tenn. Code Ann. § 23–903 (1955): "The punishment for contempt may be by fine or imprisonment, or both; but where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and all other courts are limited to a fine of ten dollars ($10.00)."

[2] *Sub nom. Taylor Implement Mfg. Co., Inc.* v. *United Steelworkers of America,* 219 Tenn. 472, 410 S. W. 2d 881 (1966), rehearing denied, 219 Tenn. 481, 410 S. W. 2d 885 (1967).

[3] This claim by petitioners is based on the Fourteenth Amendment, and respondent calls our attention to the fact that at trial and on appeal to the Tennessee Supreme Court petitioners pointed only to specific Bill of Rights provisions. The opinion below demonstrates that the Tennessee Supreme Court considered and rejected the contention that the Fourteenth Amendment and the Sixth Amendment, taken together, required that petitioners be given a jury trial. We have frequently held that a party is not

a gun, allegedly discovered during an unconstitutional search, was admitted at trial. Petitioners raised both challenges in their petition for a writ of certiorari, and we granted the writ. 389 U. S. 815 (1967).

In connection with a labor dispute, McMinn County Chancery Court issued, on January 24, 1966, an injunction against, *inter alia,*

> "inflicting harm or damage upon the persons or property of [respondent Taylor Implement Company's] employees, customers, visitors or any other persons."

On the night of February 25, 1966, a car was seen to drive past the home of Lloyd Duckett, a nonstriking Taylor Implement employee who lived in Monroe County, which adjoins McMinn. Shots were fired from the car at or into the Duckett home. Robert Wayne Ellis, Duckett's son-in-law, was standing in the front yard with another son-in-law, Dale Harris; Ellis fired back at the car with a pistol, and thought his first shot hit the back of the car. Ellis informed Monroe County Sheriff Howard Kirkpatrick by telephone, and soon after, Monroe Deputy Sheriff Loyd Powers, contacted by Kirkpatrick on his radio and presumably told of the crime, spotted a suspicious car and began following it. The car raced away but was stopped by Athens, Tennessee, policemen, notified by Powers of a speeding car heading for Athens. When Powers reached the stopped car, which contained the three petitioners, he and the Athens policemen took them to McMinn County jail,[4]

---

barred by failure to cite below the proper constitutional provisions when the lower courts consider the relevant provisions. *E. g., Braniff Airways, Inc.* v. *Nebraska State Bd. of Equalization and Assessment,* 347 U. S. 590, 598–599 (1954); *Gibbs* v. *Burke,* 337 U. S. 773, 779 (1949).

[4] The record suggests that petitioners were told they were under arrest for reckless driving.

and parked their car outside the jail. While petitioners were waiting inside the jail, Powers and several Athens policemen searched the car. Under the front seat they found an air rifle. At trial there was testimony that Ellis and Harris had recognized the car from which shots were fired as a two-tone 1960 or 1961 Dodge, that Ellis thought he hit the back of the Dodge with one shot, that the car stopped in Athens was a 1960 Dodge with a fresh bullet hole through the trunk lid, that an air rifle pellet was found the next day outside the Duckett home, and that an air rifle was found under the car's seat.[5] The chancellor noted that the case against petitioners was "premised entirely upon circumstantial evidence" but that nonetheless he had "no trouble at all with the proof which I have heard and I have weighed it in its severest form, that the charges made must be proven beyond a reasonable doubt." The three petitioners were found guilty.

Petitioners' first claim is that the Fourteenth Amendment was violated when their request for trial by jury was denied. We have held today, in *Duncan* v. *Louisiana, ante,* p. 145, that the Fourteenth Amendment imposes upon the States the requirement of Article III and the Sixth Amendment that jury trials be available to criminal defendants. We have also held, in *Bloom* v. *Illinois, ante,* p. 194, that prosecutions for criminal contempt are within the constitutional guarantee. The *Bloom* and *Duncan* cases, however, have reaffirmed the view that the guarantee of jury trial does not extend to petty crimes. As *Bloom* makes clear, *supra,* at 195–200, criminal contempt has always been thought not to be a crime of the sort that requires a jury trial regardless of the penalty authorized. Alleged criminal contemnors

---

[5] The air rifle itself was not introduced. The trial judge treated it as "filed and withdrawn."

must be given a jury trial, therefore, unless the legislature has authorized a maximum penalty within the "petty offense" limit or, if the legislature has made no judgment about the maximum penalty that can be imposed, unless the penalty actually imposed is within that limit. This Court has not had occasion to state precisely where the line falls between punishments that can be considered "petty" and those that cannot be. From *Cheff* v. *Schnackenberg,* 384 U. S. 373 (1966), it is clear that a six-month sentence is short enough to be "petty." That holding is sufficient for resolution of this case. Here the maximum penalty which Tennessee statutes permitted the chancellor to impose was 10 days in jail and a fine of $50. The contempt was therefore a "petty offense," and petitioners had no federal constitutional right to a jury trial.

Petitioners next contend that admission at trial, over timely objection, of evidence concerning the discovery of an air rifle under the seat of the car in which they were riding when arrested violated the Fourth and Fourteenth Amendments. The State concedes that the search was without a warrant, but asserts that it was not in violation of the Constitution because "reasonable." While the record is not entirely clear, petitioners appear to have been arrested for reckless driving. Whether or not a car may constitutionally be searched "incident" to arrest for a traffic offense, the search here did not take place until petitioners were in custody inside the courthouse and the car was parked on the street outside. *Preston* v. *United States,* 376 U. S. 364 (1964), holds that under such circumstances a search is "too remote in time or place to [be] incidental to the arrest . . . ." 376 U. S., at 368.

The search in question here is not saved by *Cooper* v. *California,* 386 U. S. 58 (1967), which upheld a warrantless search of a car impounded "as evidence" pur-

suant to a state statute. The police there were required to seize the car and to keep it until forfeiture proceedings could be completed. In those circumstances, said the Court, "[i]t would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U. S., at 61–62. In the instant case there is no indication that the police had purported to impound or to hold the car, that they were authorized by any state law to do so, or that their search of the car was intended to implement the purposes of such custody. Here the police seem to have parked the car near the courthouse merely as a convenience to the owner, and to have been willing for some friend or relative of McKinney (or McKinney himself if he were soon released from custody) to drive it away. The reasons that made the warrantless search in *Cooper* reasonable thus do not apply to the search here. The Court discussed in *Cooper,* 386 U. S., at 61, the reasons why that case was distinguishable from *Preston.* The case before us is like *Preston* and unlike *Cooper* according to each of the distinguishing tests set forth in the *Cooper* opinion.

Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. *Brinegar* v. *United States,* 338 U. S. 160 (1949); *Carroll* v. *United States,* 267 U. S. 132 (1925). The cases so holding have, however, always insisted that the officers conducting the search have "reasonable or probable cause" to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search. The record before us does not contain evidence that Sheriff Kirkpatrick, Deputy Sheriff Powers, or the officers who assisted in the search had reasonable or probable cause to believe that evidence

would be found in petitioners' car. Powers had not been told that Harris and Ellis had identified the car from which shots were fired as a 1960 or 1961 Dodge. He testified:

> "All I got is just that it would be an old make model car. Kinda old make model car."

The record also contains no suggestion that Ellis told Sheriff Kirkpatrick, Deputy Sheriff Powers, or any other law enforcement official that he had fired at the Dodge or that he thought he had hit it with one bullet. As far as this record shows, Powers knew only that the car he chased was "an old make model car," that it speeded up when he chased it, and that it contained a fresh bullet hole. The evidence placed upon the record is insufficient to justify a conclusion that McKinney's car was searched with "reasonable or probable cause" to believe the search would be fruitful.

Since the search was not shown to have been based upon sufficient cause, we need not reach the question whether *Carroll* and *Brinegar, supra,* extend to a warrantless search, based upon probable cause, of an automobile which, having been stopped originally on a highway, is parked outside a courthouse.

Because evidence was admitted without a satisfactory showing that it was obtained in compliance with the Fourth and Fourteenth Amendments, the judgment below is reversed and the case is remanded to the Tennessee Supreme Court for disposition not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, concurring.

I concur in the judgment in this case, and in that part of the Court's opinion dealing with the admission at petitioners' trial of evidence produced by an unlawful search.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

The Court holds in this case, as it said in dictum in *Bloom* v. *Illinois, ante,* p. 194, that persons charged with so-called "petty" crimes are not entitled to trial by jury. I am not as sure as the Court seems to be that this classification should be used to deprive a criminal defendant of a jury trial. See my dissenting opinion in *Green* v. *United States,* 356 U. S. 165, 193–219. The word "petty" has no exact meaning, and until it is given a better definition than that which the Court gives to it today, I do not desire to condemn the right to trial by jury to such an uncertain fate. See *Cheff* v. *Schnackenberg,* 384 U. S. 373, 384–393 (dissenting opinion). My Brother HARLAN's dissent in *Duncan* v. *Louisiana, ante,* p. 171, points out that whippings, even where 31 lashes were inflicted, were classified as petty crimes. And the Court here states that six months' punishment is petty. I am loath to hold whippings or six months' punishment as "petty." And here, where the offense is punishable by a $50 fine and 10 days in jail behind bars, I feel the same way. Even though there be some offenses that are "petty," I would not hold that this offense falls in that category. See my dissenting opinion in *United States* v. *Barnett,* 376 U. S. 681, 727. Since I would reverse and remand this case for a trial by jury, I do not find it necessary to consider the other questions decided by the Court.