**UNITED STATES of America,**

v.

**Frederick Robert SCONFIENZA and James Pasanello, Defendants.**

**No. 69 Cr. 123.**

United States District Court,
S. D. New York.

Jan. 20, 1970.

Whitney North Seymour, Jr., U. S. Atty., Southern Dist. of New York, New York City, for United States, Peter F. Rient, Asst. U. S. Atty., of counsel.

Peter L. F. Sabbatino, New York City, for defendant Sconfienza.

Herbert Zelenko, New York City, for defendant Pasanello.

## OPINION

COOPER, District Judge.

Defendant Sconfienza seeks to suppress certain items seized from the rear seat area and trunk of an automobile he was driving when arrested. His original motion to suppress contended that the arrest was without probable cause and that the warrantless search was thus without any justification. Judge Wyatt, following a full and complete evidentiary hearing held on April 12, 1969, denied defendant's motion in an endorsement filed June 4, 1969. He found specifically that there was more than adequate probable cause for defendant's arrest.

Now on the very eve of trial defendants press another related constitutional contention as grounds to suppress the seized evidence. Their present contention is that, although there was probable cause for defendant's arrest and thus a search without a warrant could nevertheless be justified as incident to his arrest, the search coming when it did was not in fact incident to his arrest.

*The Facts*

The facts as developed at the evidentiary hearing held before Judge Wyatt in essence amount to this: An informer tipped off railroad police to a planned theft. Police, staking out the area suspected, observed a black Buick with the rear seat removed (which had been seen in the area on prior occasions) parked in front of the railway office. One officer was positioned in a caboose about 85 yards from the office from about 7–8:30 p. m. Through binoculars and with adequate lighting around the office area he saw Sconfienza, his co-defendant and another man bring two

white cartons and a sack out of the office and place them in the trunk and one of the cartons in the rear of the car. All the while this officer in the caboose was in radio contact with a patrol car. While the men were loading the car, this patrol car drove by first one direction and then later the return direction. On both occasions the men hid themselves by quickly returning to office as the patrol car approached. The patrol car was then stationed at the end of railroad property. Sconfienza alone drove the car containing the cartons from the office down to 57th Street (just off railroad property) where he was stopped by the patrol car. The officers placed defendant under arrest, advised him of his constitutional rights and handcuffed him. One of the officers testified that as they were placing defendant under arrest he observed a portion of one white carton in the back seat area of the car partially covered by a blanket, but in plain view. The officers without searching the car or seizing any items from it took defendant in the patrol car back to 60th street to the railroad police station where his pockets were emptied. One officer took defendant's keys (which had been in defendant's pocket) and returned to defendant's car. The officer drove the car back to the station, where it was then searched by police, both the back seat area and the trunk. The items found therein (the two white cartons and the bag) were found to be stolen goods. The time between the arrest and the eventual search was 5 or 10 minutes at most.

### The Law Applicable

#### a. The item in plain view

■ With regard to the white carton which the officer observed partially hidden in the rear seat area of defendant's car, suffice it to say that the Supreme Court of the United States has repeatedly held that:

"* * * objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."
Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam).

Without question the officer, having probable cause to arrest defendant, had a right to be in the position from which, as he testified, he had the carton in plain view. Accordingly, no search was required to effect this seizure and no grounds for suppression have been shown.

#### b. The items in the trunk

The carton and bag found in the trunk upon search, however, are subject to different rules, which we now consider. The issue in this regard is whether the search and seizure of the automobile was incident to the lawful arrest (Judge Wyatt having held there was probable cause).

The leading decision of the United States Supreme Court in this area is Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). *Preston* involved an arrest for vagrancy. "Soon after" effecting the arrest, towing the car to the police station, and booking those arrested, the police searched the car. The Supreme Court held:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime —things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." 376 U.S. at 367, 84 S.Ct. at 883.

The court assumed that the police had probable cause to think the car stolen and thus could have searched the car at the outset. However, the search at the police garage "soon" afterward was held unreasonable because there was no justification for conducting it without a search warrant. There was no longer any danger that (1) those arrested might grasp a hidden weapon to sue against police; (2) destruction of evidence might occur; (3) the car might be moved out of the jurisdiction. The search was held too remote in time and place. See also, Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

The Third Circuit distinguishes *Preston* on two basic grounds and upholds certain searches even after an arrest has been effected and the car taken to the police station. See United States v. Dento, 382 F.2d 361 (3 Cir. 1967); United States ex rel. Foose v. Rundle, 389 F.2d 54 (3 Cir. 1967). The factors are: (1) that the search be "substantially contemporaneous with the arrest (within 20 minutes satisfies that requirement); (2) that there is a "reasonable nexus" between the offense defendant was arrested for and the search of the car (the arrest for vagrancy and the search of the car in which the vagrants were found as in Preston is not related and has no nexus, but a theft by means of an automobile and search of the car allegedly used in the theft does have such a nexus). The Fifth Circuit and Sixth Circuit seem to have adopted this approach. Arwine v. Bannan, 346 F.2d 458 (6th Cir. 1965); Crone v. United States, 411 F.2d 251 (5th Cir. 1969).

In Wood v. Crouse, 417 F.2d 394 (10th Cir. 1969) (the case principally relied upon by defendant),[1] however, the Tenth Circuit specifically rejected both distinctions suggested by the Third Circuit and found any later search after an arrest to be unreasonable because of the absence of any justification as defined in *Preston*.

"A search without a warrant is valid if incidental to an arrest only because the need to protect the officers, and other similar practical considerations, justify an exception to the general requirement that a warrant is a precondition to a valid search. When the justification is lacking, as in the case at bar where the vehicle was in police custody and its occupants in jail, then regardless of the time involved or the existence of probable cause for the search, a search without a warrant is simply not incident to the arrest."

The Second Circuit in United States ex rel. Spero v. McKendrick, 409 F.2d 181 (1969),—a case to which defendant has made no reference whatever—decided a case on facts rather similar to ours. The officers arrested two occupants of a car (having probable cause to do so) and frisked them for weapons. The men were arrested for hijacking. The police saw a rust colored jacket on the back seat of the car and in plain sight. It fitted a description of one worn by a hijacker. Because of traffic, police took defendants with the car to the station house one-half block away. Smelling fresh paint, police discovered upon scraping that the car had been repainted and that the original paint matched the color of the hijacking car. Upon a further search of the car, police discovered glasses and a hat in the glove compartment. Still later a further examination of the car corroborated other descriptions of the contents of the car. The Second Circuit held:

"Discovery of the corduroy jacket, a discovery accomplished without a search, gave the police reasonable grounds to believe that the car might be connected with the hijacking. Dis-

---

1. Defendant also relies heavily on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) decided June 23, 1969. The Second Circuit has held that case prospective only, however, applicable only to searches occurring after June 23, 1969. United States v. Bennett, 415 F. 2d 1113 (2d Cir. 1969). The search herein involved occurred February 18, 1968.

covery of the fact that the car had been recently repainted * * * materially strengthened that probability. Under the circumstances it was reasonable to search the glove compartment. We think it immaterial whether this was done at the streetcorner or a few minutes later in front of the station house.

\*   \*   \*   \*   \*   \*

The discovery later that night * * was not an unreasonable or an unlawful search. It was merely an inspection by the police of a vehicle which had already been lawfully seized. Petitioner's reliance upon Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) is misplaced. The case is clearly distinguishable on its facts."
409 F.2d at 184.

### Conclusion

The guidance offered us in *Spero* indicates that the search and seizure in the present case was reasonable. The Second Circuit relied in part, when finding *Preston* distinguishable on its facts, on the fact that the police had "reasonable grounds to believe that the car might be connected with the hijacking." Thus similar to the Third Circuit's distinction that in *Preston* the car had no "nexus" with the vagrancy crime the occupants were arrested for. Further, the Second Circuit, once finding that under the circumstances the search was reasonable, considered it "immaterial whether this was done at the streetcorner or a few minutes later in front of the station house." This appears to adopt as well the Third Circuit's second distinction of "substantially contemporaneous search" and rejects the Tenth Circuit's conclusion that the length of the time period following arrest is immaterial.

Finally, our circuit has suggested an additional basis for finding such a search proper. In *Spero* the court held the search lawful because "It was merely an inspection by the police of a vehicle which had already been lawfully

seized." Cf. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Dyke v. Taylor Implement Mfg. Co., *supra*, 391 U.S. at 221, 88 S.Ct. 1472.

█ Under the facts before us, we find the ruling in *Spero* to be determinative. With ample ground to believe that the car was an instrumentality used during the robbery, there was a sufficient connection to justify a reasonable search a few minutes later at the stationhouse only three blocks from the place of arrest. Even if this was not the case, the inspection of the car could be considered as an examination by the police of a vehicle lawfully seized.

Accordingly, application to suppress the items seized is denied.

So ordered.