## Commonwealth v. Carlos

*Stephen B. Harris,* for Commonwealth.
*William B. Moyer,* for defendants.

GARB, J., July 9, 1970.—Defendants herein were indicted by the Bucks County grand jury on January 6, 1970, in a two-count bill of indictment, charging that on or about February 27, 1969, they did possess marijuana and that they did conspire and agree to possess a narcotic drug. Upon petition to suppress the results of two separate searches, a hearing was held before the undersigned on June 25, 1970, and as a result thereof we make the following

## FINDINGS OF FACT

1. On February 27, 1969, at approximately 9:48 p.m., Officer James Tsakanikas was an officer for the Middletown Township, Bucks County, Pa., Police Department, and was at that time operating a Middletown Township Police Department marked automobile in the company of Officer Lawrence Butkovich.

2. At the aforesaid time, the Steer-Inn was a restaurant, located and situate on the northerly side of U. S. Route 1 in the said Township of Middletown, Bucks County, Pa., just west of the intersection of U. S. Route 1 and Flowers Mill Road.

3. The Steer-Inn has an entrance and exit for motor vehicles on U. S. Route 1, the entrance being on the most easterly side, and the exit on the most westerly side, with an additional entrance and exit combined leading onto Flowers Mill Road.

4. The Steer-Inn building is located in the approximate middle of the entire lot, although not facing U. S. Route 1 squarely, with a paved parking lot surrounding the entire building, with parking around the entire perimeter of the lot and immediately in front of the building on the U. S. Route 1 side.

5. At the time in question, Steer-Inn was open for business and the parking area was illuminated with lights on each of the four corners of the building and elsewhere unidentified on this record.

6. At the time in question, the police officers were looking for a certain individual reported to be driving or in a certain Camero automobile, and as they approached the Steer-Inn they observed a Camero automobile similar to the one whose description they had parked in the Steer-Inn parking lot on the westerly-most side thereof near to U. S. Route 1.

7. The police officers entered the Steer-Inn parking lot through the entrance on U. S. Route 1, proceeded

to the rear of the building where they made a left turn, and at the northwest corner of the building made another left turn, intending to proceed to investigate the Camero automobile.

8. While proceeding toward the Camero automobile, Officer Tsakanikas observed a red Mustang parked on the western perimeter of the parking lot opposite the northwest corner of the building, facing the building, and he observed defendant Doran therein.

9. The officers immediately turned their police vehicle and brought it to a stop, facing the right front of the red Mustang, although on an angle, and Officer Tsakanikas then proceeded to the red Mustang. Officer Butkovich remained in the police vehicle, the lights thereof remaining on and trained upon the red Mustang.

10. Officer Tsakanikas observed defendant Doran seated in the front passenger seat with defendant Carlos seated in the driver's seat and defendant Beck seated between them, in a position between the two bucket seats where a console would usually be placed, but which had been removed from this particular automobile.

11. Officer Tsakanikas was under the impression that Doran was being sought by virtue of a warrant issued in Bristol Township for what he thought was a second violation of section 601 of The Vehicle Code of April 29, 1959, P. L. 58. He later determined that the warrant was for a first violation of section 601, a summary offense.

12. The officer greeted defendant Doran, and defendant Doran was seated with his back to the window so as to obstruct the officer's view of the interior of the automobile.

13. Officer Tsakanikas observed all of the defendants engaged in some activity which appeared to

him to be an attempt to secrete some object or objects within the car.

14. Officer Tsakanikas had with him a six-cell flashlight.

15. In order to secure a better view of the activities within the car, the officer walked around the front of the Mustang and, while passing that portion of the windshield exposed to the left front side of the car, when he was a distance of approximately three feet away from her, he observed defendant Beck attempting to force a plastic bag containing some substance into her pocketbook.

16. The officer asked defendant Carlos to get out of the car and exhibit the registration for the motor vehicle as well as his operator's license.

17. Defendant Carlos got out of the car and was in the process of exhibiting his motor vehicle registration and driver's license when the officer directed the other two to get out of the car and placed them under arrest. All three were placed under arrest before the other two had exited from the automobile.

18. After placing them under arrest, the officer observed a syringe cap lying on the floor of the back seat on the driver's side of the car.

19. The officer then took defendant Beck's handbag from her and found therein a plastic bag containing a brownish-green substance, conducted a search of the car and found a brown manila envelope above the dashboard, containing a similar substance, a quantity of safety pins was found in the glove compartment, a piece of candy-like substance was found in the car, chewing gum wrappers and some Virginia Slim cigarettes were likewise found in the car. Under the back of the front seat of the car, a hypodermic needle was likewise found.

20. All defendants were thereupon personally searched and they were then transported to head-

quarters.

21. Officer Tsakanikas then presented himself before a justice of the peace where, under oath, he testified to substantially all of the foregoing and secured thereby a search warrant for the car.

22. The car was thereupon searched pursuant to the issuance of the search warrant and one Virginia Slim cigarette was found.

## DISCUSSION

It is apparent from the foregoing, and all parties agree, that unless the initial arrest and search were constitutionally proper, the search warrant would be constitutionally imperfect and therefore all evidence secured thereby would be suppressed, as being the fruit of a poisoned tree: Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Therefore, the initial question for disposition, and as we view it the ultimate question, is whether or not the initial search was constitutionally permissible, and this question is based upon whether it can be found to be incidental to a lawful arrest: Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950); Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959); Abel v. United States, 362 U. S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668 (1960); Commonwealth v. Reece, 437 Pa. 422 (1970); Commonwealth v. Gordon, 431 Pa. 512 (1968).

It is clear that the arrest was made without warrant and, therefore, could only be made if sufficient probable cause was presented to the officer at the time he made the arrest: Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); Commonwealth

v. Hicks, 434 Pa. 153 (1969).

We need not entangle ourselves in the thicket of the vexatious question of whether or not the officer had a right to approach and observe the activity of the individuals within the car. Compare Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); Dyke v. Taylor Implement Manufacturing Co., Inc., 391 U. S. 216, 88 S. Ct. 1472, 20 L. Ed. 2d 538 (1968); Henry v. United States, supra; Beck v. Ohio, supra; Commonwealth v. Harris, 429 Pa. 215 (1968); Commonwealth v. Dussell, 214 Pa. Superior Ct. 1 (1969); Commonwealth v. Anderson, 208 Pa. Superior Ct. 323 (1966); Commonwealth ex rel. Bowers v. Rundle, 200 Pa. Superior Ct. 496 (1963).

Even if the officer had a right to approach and observe the car and its contents and occupants, he did not secure thereby sufficient and adequate probable cause upon which to justify an arrest without a warrant. An arrest without a warrant must be based upon firmer ground than mere suspicion. There must be sufficient evidence to lead a man of reasonable caution to believe that a felony had been committed and that the person to be arrested had committed or was committing the offense: Commonwealth v. Altizer, 213 Pa. Superior Ct. 201 (1968); Commonwealth v. Murray, 437 Pa. 326 (1970); Commonwealth v. Marino, 435 Pa. 245 (1969); Commonwealth v. Frye, 433 Pa. 473 (1969); Commonwealth v. Brayboy, 431 Pa. 365 (1968); Commonwealth v. Goslee, 427 Pa. 403 (1967). Furthermore, the validity of the arrest may not be justified by the fruits of the search. In determining the validity of the arrest, we must look only to the facts and circumstances known to the police officer prior to the search: Commonwealth v. Friel, 211 Pa. Superior Ct. 11 (1967); Commonwealth v. Hicks, supra.

Clearly, the officer did not approach the car for the

purpose of arresting Doran. He frankly admits that he did not know why he approached the car. Additionally, it is inconceivable to us that, having once observed three occupants of the car, he would have approached the car alone, leaving his fellow officer in the patrol car, if he had intended to arrest Doran when he approached him. Having approached the car, he observed what appeared to him to be suspicious conduct in the apparent effort on the part of the occupants to hide or secrete certain objects within the car. In attempting to secure a better vantage point, he walked around the car to the other side and observed the occurrences inside through the windshield. While he saw defendant Beck attempting to stuff some object within a plastic bag into her handbag, it is utterly inconceivable to us that from his vantage point, at night, without any indication of any light being on within the car, that he could conclude that the contents of that plastic bag were marijuana. Succinctly stated, we simply find it totally implausible and, therefore, do not believe his testimony that he observed a brownish-green substance with the consistency of chopped tea leaves within the double plastic bag clutched in Beck's hand. To make such an observation would require the sensitivity of a jackrabbit and the instincts of a groundhog. We refuse to attribute to this police officer those qualities. He may well have had a suspicion as to what the contents were, but we cannot accept his testimony that he reached such a conclusion based upon what he could observe at that time. We believe rather that his suspicions were aroused, and perhaps properly so, and that he determined that the contents were marijuana from his closer inspection after having made the arrest and search of the handbag.

Additionally, we find his credibility as a witness seriously impaired. There were some minor incon-

sistencies between his testimony at the hearing before us and his testimony at the preliminary hearing, but we do not consider them of any great moment. However, our observations of him as a witness unmistakably indicate that he was continually shifting and evasive and his demeanor on the witness stand was such as to render it impossible for us to afford substantial credibility to his testimony. He was admonished on more than one occasion to restrict his answers to the questions and at one point was so admonished for his evasion of a question put to him by the court.

For the foregoing reasons, we do not believe that the police officer could possibly have observed what he said he observed and drawn the conclusions he drew as to the contents of the plastic bag and, therefore, we cannot find that there was sufficient and adequate probable cause to justify the arrest. There not having been sufficient and adequate probable cause for the arrest without a warrant, there could be no constitutionally permissible search incident thereto. That being the case, all evidence secured as the result of the search incident to the arrest must be suppressed and that evidence cannot be used to justify sufficient and adequate probable cause for the issuance of a search warrant. Therefore, the evidence secured as the result of the search conducted after the issuance of the search warrant must likewise be suppressed.

## CONCLUSIONS OF LAW

1. The police officer did not have sufficient and adequate probable cause to make an arrest without a warrant.

2. The arrest, therefore, being unlawful, the search incident to the arrest was likewise unlawful.

3. The evidence secured as the result of the unlawful search incident to the unlawful arrest being unlawfully secured, could not justify sufficient and

adequate probable cause for the issuance of the search warrant.

4. The issuance of the search warrant was unlawful.

5. All evidence secured as the result of the search incident to the arrest, as well as the search subsequent to the issuance of the search warrant, are suppressed.

## ORDER

And now, July 9, 1970, for the reasons set forth in the foregoing findings of fact and conclusions of law, all evidence secured as the result of the search incident to the arrest and resulting from issuance of the search warrant, are hereby suppressed and shall not be admitted in evidence against any of these defendants. This opinion, order, and all papers, documents and pleadings entered pursuant to the motion to suppress, shall be impounded by the clerk of criminal court and shall not be revealed to anyone except counsel for the Commonwealth or defense, except upon order of court.