158

The State of Ohio, Appellee, *v.* Dostal et al., Appellants.

[Cite as State v. Dostal (1971), 28 Ohio St. 2d 158.]

(No. 71-252—Decided December 22, 1971.)

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Dennis J. McGuire,* and *Mr. William J. Coyne,* for appellee.

*Messrs. Good & Haffner* and *Mr. Walter J. Haffner,* for appellants.

Leach, J. Essentially, we are here concerned with a determination of the scope of the recent holdings of the United States Supreme Court that, under some circumstances, a person charged in a state court with criminal contempt is entitled to a trial by jury; and, specifically, with the question of the applicability of such holdings to a trial held in June 1969. Requests for jury trial were made prior to trial herein and refused by the trial court.

Appellants assert, in effect, that such right of trial by jury was established by *Bloom* v. *Illinois* (1968), 391 U. S. 194, as to all criminal contempts except "petty offenses"; that the line of demarcation between "petty offenses" and "serious crimes" or "serious offenses" has since been established by *Baldwin* v. *New York* (1970), 399 U. S. 66, at "more than six month's imprisonment"; that *Baldwin's* definition of a "petty offense" should be applied retrospectively to the date of *Bloom* (May 20, 1968); that since the trial court herein imposed a sentence on one of appellants (Mallory) in excess of six months' imprisonment, the charges of contempt against each of appellants must now be considered as "serious offenses" within the meaning of *Bloom,* and each of the judgments reversed because of the refusal by the trial court to grant a jury trial.

With reference to those appellants other than Mallory, we reject this assertion upon the basis that in determining the right of trial by jury in contempts, as to which there is no established maximum penalty, the United States

Supreme Court has looked to "the penalty actually imposed." *Bloom* v. *Illinois, supra* (391 U. S. 194); *Cheff* v. *Schnackenberg* (1966), 384 U. S. 373; *Dyke* v. *Taylor Implement Mfg. Co.* (1968), 391 U. S. 216. Although a joint trial was held, each of the appellants was treated separately in the findings of guilt and sentencing.

So far as Ohio law is concerned, the type of contempt here involved does not have a maximum penalty. *State* v. *Local Union* (1961), 172 Ohio St. 75. Thus, as to all appellants except Mallory the application of the "penalty actually imposed" test leads to the conclusion that the conviction of each was treated by the court as a "petty offense," even if we assume (1) that the "more than six months' imprisonment" test of *Baldwin* is applicable to all criminal contempts, including those involving a direct interference with the ability of a court to physically operate, and further assume (2) that the *Baldwin* test, announced on June 22, 1970, is applicable to a trial held in June 1969.

We conclude that the trial court did not err in its finding of guilt and its imposition of sentence as to such other appellants.

We turn now to the consideration of the conviction of appellant Mallory. To bring the issues into proper focus, a somewhat abbreviated review of recent constitutional "interpretative" history is indicated.

Prior to *Green* v. *United States* (1958), 356 U S. 165, as noted in the concurring opinion of Mr. Justice Frankfurter, the power of a court to punish for contempt after hearing without the intervention of a jury had been accepted without question by some 53 Justices of the United States Supreme Court over a span of some 150 years. Green was found guilty of contempt and sentenced to three years imprisonment by a United States District Court for wilfully disobeying an order to surrender to the United States Marshal for execution of sentence, after having been released on bail pending appeal on a criminal conviction. His conviction and sentence for contempt was af-

firmed by the United States Supreme Court in a divided decision, holding that criminal contempts were not subject to jury trial as a matter of right, and that the Constitution did not require a prison term of more than one year for contempt be based on a grand jury indictment. Justice Black (joined by Chief Justice Warren and Justice Douglas) dissented, holding that, notwithstanding the precedents, the time had come for establishing a rule that persons charged with contempt consisting of actions outside the courtroom are entitled to trial by jury and, where "severe prison sentences or fines" may be imposed, to indictment by a grand jury.[3]

In *United States* v. *Barnett* (1964), 376 U S. 681, the United States Supreme Court again considered the question of whether a right of jury trial existed in cases of criminal contempt, and upheld the order of a United States Court of Appeals denying Governor Barnett's request for jury trial.

However, for the first time in a contempt case a reference to "petty offenses" appears. This "straw in the wind" reference was contained in a footnote (376 U. S., at page 695, note 12). After listing some 50 cases of that court "that support summary disposition of contempts, without reference to any distinction based on the seriousness of the offense," the footnote stated:

"However, our cases have indicated that, irrespective of the severity of the offense, the severity of the penalty imposed, a matter not raised in this certification, might entitle a defendant to the benefit of a jury trial. * * * In view of the impending contempt hearing, effective administration of justice requires that this *dictum* be added: Some members of the court are of the view that, without regard to the seriousness of the offense, punishment by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses."

---

[3]Later decisions of the court establishing a right to trial by jury in criminal contempts have made no references to the Grand Jury requirements of the Fifth Amendment.

Two years later, the court decided *Cheff* v. *Schnackenberg, supra* (384 U. S. 373). There, the defendant had been convicted of criminal contempt by a federal Court of Appeals and sentenced to six months' imprisonment for disobedience of a *pendente lite* order of that court requiring compliance with a cease-and-desist order of the Federal Trade Commission. Appellant's claim therein that he was entitled to a jury trial was rejected by a plurality of the court (opinion by Justice Clark, joined by Chief Justice Warren and Justices Brennan and Fortas) on the basis of the rationale that a "petty offense" does not constitutionally require a jury trial. By reference to an Act of Congress (Section 1, Title 18, U. S. Code) defining "misdemeanor, the penalty for which does not exceed imprisonment for a period of six months," as a "petty offense," the plurality concluded that "Cheff's offense can be treated as only 'petty' in the eyes of the statute and our prior decisions."

The plurality opinion also stated that "in the exercise of the court's *supervisory power* and under the peculiar power of the federal courts to revise sentences in contempt cases, we rule further that sentences exceeding six months for criminal contempt may not be imposed *by federal courts* absent a jury trial or waiver thereof." (Emphasis added.)

Justices Harlan and Stewart concurred in the affirmance in *Cheff*, but did so on the basis that criminal contempts were not subject to either the grand or petit jury requirements of Section 2, Article III of the Constitution, or of the Fifth or Sixth Amendments.* Justices Douglas and Black dissented upon the basis that: "Resolution of the question of whether a particular offense is or is not 'petty' cannot be had by confining the inquiry to the length of sentence actually imposed." Justice White did not participate.

---

*They also observed that "to decide whether to proffer a jury trial, the judge must now look ahead to the sentence, which itself depends upon the precise facts the trial is to reveal."

In *Duncan* v. *Louisiana* (1968), 391 U. S. 145, it was held for the first time that the Due Process Clause of the Fourteenth Amendment "guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantees." While concluding that "so-called petty offenses" are "exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions," the majority opinion specifically declined to define the "boundaries of the petty offense category" except to hold that "a crime punishable by two years in prison is * * * a serious crime and not a petty offense." Thus, the conviction of the defendant by a state court, after denying his demand for jury trial, was reversed upon the basis that, even though the penalty actually imposed was a prison sentence of 60 days and a fine of $150, the offense (battery) was punishable by imprisonment for two years.

*Bloom* v. *Illinois, supra* (391 U. S. 194), was decided the same day as *Duncan* (May 20, 1968). Bloom had been convicted of criminal contempt and sentenced to imprisonment for 24 months for wilfully petitioning to admit to probate a will falsely prepared and executed after the death of the putative testator. Timely demand for jury trial had been refused. While acknowledging that "at common law contempt was tried without a jury" and apparently acknowledging that holdings to the contrary appeared to be based on "a constitutional principle which is firmly entrenched and which has behind it weighty and ancient authority," the majority opinion, at page 198, stated:

"* * * Our deliberations have convinced us, however, that serious contempts are so nearly like other serious crimes that they are subject to the jury trial provisions of the Constitution, now binding on the states [by virtue of *Duncan*], and that the traditional rule is constitutionally infirm insofar as it permits other than petty contempts to be tried without honoring a demand for a jury trial."

As in *Duncan*, the majority opinion declined to settle

"the exact location" of the line between "petty contempts" and "serious contempts," but, applying the rule of *Cheff* of looking to the penalty actually imposed in an action for contempt where no maximum penalty is provided, concluded that the imprisonment of Bloom for *two years* required a reversal.

Also, on May 20, 1968, the court decided *Dyke* v. *Taylor Implement Mfg. Co., supra* (391 U. S. 216). While reversing on the basis of an illegal search, and while acknowledging that "this court has not had occasion to state precisely where the line falls between punishments that can be considered 'petty' and those that cannot be," the majority opinion held that the imposition of a 10-day jail sentence and a fine of $50, being the maximum authorized by law in Tennessee, resulted in the contempt being a "petty offense" with "no constitutional right to a jury trial."

In *DeStefano* v. *Woods* (1968), 392 U. S. 631, the majority opinion held that the principles of *Duncan* and *Bloom* would receive only prospective application and would not be applied to trials begun in state courts prior to May 20, 1968. Upon that basis, the court declined to answer the question "of whether, for cases to which the rules in *Duncan* and *Bloom* apply, the Fourteenth Amendment * * * affords a right of jury trial for criminal contempts punished by imprisonment for *one year*." (Emphasis added.)

At this point in the history of judicial interpretation of the applicability of the Sixth Amendment's right of jury trial to trials in *state* courts, involving either statutory crimes or criminal contempt, one could say with some degree of assurance, that a penalty of *two years* (authorized as to statutory crimes—actually imposed as to most criminal contempts) would require, at least if demanded, a jury trial. Conversely, it could also be said, with about the same degree of assurance, that a penalty of six months or less (by analogy to the congressional definition of "petty crimes," and specifically adopted by the United

States Supreme Court as to *federal* courts) would not require a jury trial.

In view of the reference in *Duncan,* at page 161, to the fact that "in 49 of the 50 states crimes subject to trial without a jury, which occasionally include simple battery, are punishable by no more than one year in jail," one might infer that the line of demarcation between "petty" and "serious" offenses would eventually be established at not more than one year. As of that time, however, we find no definite indication in any of the majority opinions, heretofore referred to, upon which a state trial judge could justify departing from the previously established law of his own state as to the right of trial by jury, so long as the penalty imposed in criminal contempt did not exceed one year.

Such was the state of the "law" at the time of the trial herein in June 1969.[5] One year later, the United States Supreme Court decided *Baldwin* v. *New York, supra* (399 U. S. 66). Defendant therein was charged in the New York City court with "jostling," a misdemeanor punishable by a maximum term of one year. His request for jury trial was denied and he was convicted and sentenced to imprisonment for the maximum term. Upon appeal, the United States Supreme Court reversed. Five members of the court agreed that the conviction should be reversed, but they did not all agree as to the grounds of the decision.

The opinion by Justice White, joined by Justices Brennan and Marshall, concluded that "no offense can be deemed 'petty' for purposes of the right of trial by jury where imprisonment for more than six months is author-

---

[5]The case of *Frank* v. *United States* (1969), 395 U. S. 147, decided on May 19, 1969, just before the trial herein, involved an interpretation of the six-months' limitation on non-jury contempt trials applied to *federal* courts by *Cheff* under the court's "supervisory power." By reference to federal statutes, the majority in *Frank* concluded that under such circumstances a federal court may place a "petty offender" on "probation for up to five years and, if the terms of probation are violated, he may then be imprisoned for six months." *Frank,* therefore, has no application to the problem presented here.

ized.'' The opinion of Justice Black, joined by Justice Douglas, while concurring in the judgment of reversal, took the position that the right of jury trial applies to all crimes, regardless of whether the offense charged is ''petty'' or ''serious.''[6] Chief Justice Burger, Justice Harlan and Justice Stewart dissented in separate opinions. Justice Blackmun did not participate.

*Baldwin*, it will be observed, did not involve contempt. Will the ''more than six months' imprisonment'' test announced by three Justices in *Baldwin*, construed in the light of *Duncan* and *Bloom*, be applied as an absolute to state contempts generally? Will it be applied to all types of contempts, including direct interference with the physical ability of a court to operate? In our opinion, it should not be so applied, but only time will tell.

In *Bloom*, the court seemingly determined, although by *obiter dicta*, that the jury trial rule is to be applicable even to contempts involving direct disturbances of the court. However, in *Mayberry* v. *Pennsylvania* (1971), 400 U. S. 455, 27 L. Ed. 2d 532, the court, in reversing the judgment of the trial judge—finding defendant guilty of 11 criminal contempts arising from his conduct during the trial and sentencing him to not less than one nor more than two years on each contempt, a total of not less than 11 nor more than 22 years—made no reference to any right of trial by jury, but remanded for trial before ''another judge not bearing the sting of these slanderous remarks.'' Whether the Supreme Court intended thereby to modify the *dicta* of *Bloom*; whether it merely assumed that on retrial the new

---

[6]Justices Black and Douglas had taken essentially this same position in their dissent in *Dyke*.

[7]The opinion by Justice White in *Bloom*, at page 210, stated: ''* * * The power of a judge to quell disturbance cannot attend upon the impaneling of a jury. There is, therefore, a strong temptation to make exception to the rule we establish today for disorders in the courtroom. We are convinced, however, that no such special rule is needed. * * * By deciding to treat criminal contempt like other crimes insofar as the right to jury trial is concerned, we similarly place it under the rule that petty crimes need not be tried to a jury.''

judge would apply the jury trial requirements of *Bloom* as possibly expanded by *Baldwin*; or whether it intended to apply on retrial the rationale of *Jenkins* v. *Delaware*[8] (1969), 395 U. S. 213, is a matter of some speculation.

Assuming, however, the applicability of both *Bloom* and *Baldwin* to all actions by a state court involving criminal contempt, we are not persuaded that the "six months' imprisonment" test, *first* announced as to *state* trials on June 22, 1970, must or should be applied retrospectively.

While the United States Supreme Court had indicated in prior cases the ultimate necessity of announcing a specific dividing line between "petty" and "serious" offenses, nevertheless the actual announcement on June 22, 1970, constituted, as to the state of Ohio and other states, a "change" in the "existing law."

Even in the state to which it was specifically directed (New York), *Baldwin* has been held to be applicable "only to those trials commencing on or after the date of that decision, June 22, 1970." *People* v. *Dargan* (1970), 27 N. Y. 2d 100, 261 N. E. 2d 633. In *Dargan*, it was asserted by appellant that the decision in *Baldwin* (decided June 22, 1970) should be applied retroactively to cases commenced after the decision in *Duncan* (decided May 20, 1968). The Court of Appeals of New York rejected this assertion, holding "that the *Baldwin* case, not any prior case, is the appropriate landmark in determining what cases should be affected by the new rule."

---

[8]*Jenkins* v. *Delaware*, cited *Johnson* v. *New Jersey* (1966), 384 U. S. 719 which held that the *Miranda* case (384 U. S. 436) "applies only to cases in which the trial began after the date of our [*Miranda*] decision," and then concluded that a retrial, ordered on grounds unrelated to *Miranda*, is not the "commencement" of a case, but instead would be a mere continuation of the case originally commenced prior to the *Miranda* decision. No reference is made in *Mayberry* to *Jenkins*. The original trial in *Mayberry* took place in December 1966, and the Supreme Court of Pennsylvania (434 Pa. 478, 255 A. 2d 131) rejected defendant's claim as to a right to trial by jury on the basis of *De-Stefano*, which held that *Duncan* and *Bloom* "should receive only prospective application."

We agree with the rationale expressed in *Dargan*. We believe that such conclusion is supported by the holdings of the United States Supreme Court in *Johnson* v. *New Jersey* (1966), 384 U. S. 719; *Stovall* v. *Denno* (1967), 388 U. S. 293; *DeStefano* v. *Woods, supra* (392 U. S. 631); *Desist* v. *United States* (1969), 394 U. S. 244; and *Halliday* v. *United States* (1969), 394 U. S. 831.

We conclude, therefore, that even if it be assumed that the *Baldwin* rule is applicable to criminal contempts of the nature here involved, the *Baldwin* case, not the *Bloom* case, sets the starting date for the applicability of the new rule. Thus, even if *Baldwin* now mandates a jury trial for *all* criminal contempts where the penalty actually imposed exceeds six months' imprisonment, a matter as to which we have reservations but need not decide, such mandate applies only to trials begun after the date of the *Baldwin* decision. Upon this basis, the judgment of conviction of appellant Mallory is affirmed. The judgments of conviction of the other appellants are affirmed, both upon this basis and upon the additional basis that none was sentenced to imprisonment in excess of six months.

*Judgments affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN and STERN, JJ., concur.[9]

---

[9]JUSTICE DUNCAN sat in this case during oral argument, but did not participate in the decision.