John Walter NOLAN, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

March 29, 1979.

---

F. Glen Sisson, Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, W. Fred Axley, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

DWYER, Judge.

Convicted of receiving stolen property over the value of $100 and sentenced to not less than five nor more than ten years in the penitentiary, John Walton Nolan appeals to this court with his sole assignment of error challenging the trial court's sustaining the legality of the search and seizure of certain items taken from a motel room and the appellant's automobile.

At the pre-trial hearing on the appellant's motion to suppress, the following is a summation of the evidence as disclosed by the record.

On August 1, 1977, Memphis police officers responded to a disturbance call from the assistant manager of the Rodeway Inn located at 2949 Airways. When the officers arrived they found the appellant, who appeared to be intoxicated, kicking the door of Room 165 and using profanity. A woman and a young boy were with the appellant. The officers placed the appellant under arrest for being drunk and disorderly and advised him of his rights. They searched him and found a vial of pills that the officer suspected to be narcotics. (The pills were not identified at the hearing or at the trial.) They then placed him in their squad car. The officer then related that the assistant manager advised him that the appellant earlier had asked for the key to Room 118 stating he had belongings in that room. The assistant manager had refused the appellant's request because the room was not registered to him but to a Danny Simms. The officer accompanied the assistant manager to Room 118, and using a passkey, they entered the room. Therein the officer observed two television sets, one of which the assistant manager identified as belonging to the motel. The officer then observed a white substance in a spoon and several syringes on the floor. The officer also noted that the wires to a telephone had been clipped and spliced into the wires of a tape recorder. He also found the appellant's billfold on the dresser and two sets of car keys.

The officer testified that he sensed the second television set was stolen although at the time he was unaware of the actual burglary from which the articles had been purloined. At this time the youth that was with the appellant, upon being questioned, directed the officer to the appellant's car in the motel parking lot. He further testified that when drugs were involved in an arrest it was a departmental regulation to inventory the automobile before impounding it. A search of the trunk of the appellant's car, using the keys found by the officer in Room 118, revealed a C. B. radio, a cash register and coins of various denominations. (The C. B. radio was identified at the trial as being stolen from a burglarized home.)

After the officer inventoried the car, the assistant manager requested that he accompany her to a third room, Room 135, where he found Richard Keith Norris who appeared to have passed out on the bed. (At the trial the assistant manager testified Richard Norris had registered in Room 118 as Danny Simms.)

■ We will first evaluate the search of the motel room. We think that since the appellant was not registered as the occupant of Room 118 he lacks standing to attack the search. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

■ We will now discuss the search of the automobile. At the threshold, a warrantless search is per se unreasonable unless it is conducted within a recognized exception, *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 76 L.Ed. 59 (1951), such as an incident to a lawful arrest, one made in hot pursuit, and stopping an automobile with probable cause. The trial court concluded that the warrantless search of the appellant's automobile was reasonable on two predicates: (1) it was a lawful inventory search, and (2) it was a lawful "probable cause" search under exigent circumstances. The State here makes no argument as to (2), but in deference to the trial court we will put both (1) and (2) under judicial scrutiny, recognizing there is no set form for determining whether a search is reasonable or not, for all searches must depend on their own facts and circumstances.

■ The appellant contends the warrantless search was made in contravention of both federal and state constitutions. We are in accord with the appellant and in disagreement with the learned trial court on both of his predicates holding the search to be reasonable. In search and seizure questions the guarantees of the Fourth Amendment of the United States Constitution and Article 1, § VII of the State Con-

stitution must be liberally construed in favor of the citizen. *Hughes v. State*, 176 Tenn. 330, 141 S.W.2d 477 (1940). We think the founding fathers in drafting our Constitution intended that citizens should remain secure in their properties and be protected from illegal intrusions by government officials. This premise, plus taxation without representation, was the very basis upon which this democracy came into existence and is as viable now as then. The protection or security from unreasonable searches inures without exception, alike to all citizens regardless of their station in life.

We will now examine the search under the inventory theory. There is a vast difference between the facts in the case sub judice and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), as relied upon by the State. In the case sub judice, appellant's car was parked on the lot of the motel and was not creating any traffic congestion, was not posing a hazard of any type, and from the record, was not violating any local ordinance. In *Opperman*, supra, the *legal* impoundment of the vehicle was brought about after multiple violations of municipal parking ordinances had been placed on the vehicle. The police impounded the vehicle with removal to a police lot, requiring an inventory of its contents to protect the owner as well as the police from claims of theft and to protect the public.

Further, there was no basis for concern as to public safety (gun in car) and the car did not constitute a nuisance as in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2423, 37 L.Ed.2d 706 (1973). In short, the Fourth Amendment and Article 1, § VII of the State Constitution cannot be bartered away by a police regulation which commands the officer to make an inventory search of vehicles, as here, when the arrest was removed from and not connected with the automobile. What the officer left unsaid about departmental policy in drug cases requiring an inventory is that there must be a nexus between the drugs and the car in some manner before the departmental policy can pass constitutional muster. Moreover,

while not controlling, there is no evidence in this record that the pills found on appellant were contraband. While the inventory search may have been prompt effective police action which uncovered stolen property, and commendable perhaps in law enforcement circles, it was, as we view the circumstances, an act without sanction of law. We therefore think the "inventory" of the automobile justifying the seizure is without merit.

We will now turn our attention to the probable cause under exigent circumstances question. The trial court sustained the search on the grounds that the officer had probable cause to believe the appellant's vehicle had been used either to transport stolen goods to that locale, or possibly contained other stolen goods, and that exigent circumstances existed since the room was rented to a third unidentified party, opening up the possibility that this third party may have been in the vicinity and could have removed the car. It may be true that after observing the second television and finding appellant's keys in Room 118, the officer assumed from police experience that the television set was stolen, but that fact alone, we think, cannot support "probable cause" to conduct a warrantless search of the appellant's car some distance removed and unconnected with the location of the television. The Supreme Court of the United States in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) stated:

> "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."

In short, the fact that the television set *found in someone else's room* was stolen, or surmised so by the officer at the time, created no factual foundation other than a good suspicion to the officer that contraband may be in the trunk of appellant's car. As we understand *Coolidge v. New Hampshire*, supra, to invoke *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), two facts must be evident to support a

warrantless search of an automobile; neither may stand alone: (1) probable cause and (2) exigent circumstances. We think that the exigent circumstances of *Carroll* and *Chambers* have no applicability here. The appellant was safely in police custody almost immediately after his arrest. We may safely assume therefore he was in no position to remove his car. The automobile of appellant was not *stopped* on the highway, it was not *fleeting, Fuqua v. Armour,* 543 S.W.2d 64 (Tenn.1976). We are in respectful disagreement with the trial court on both counts. On the facts, we think there was no "probable cause" under exigent circumstances to conduct a warrantless search. The motion to suppress the evidence (the C. B. radio) which came from the trunk of the automobile should have been sustained.

The judgment of the trial court is accordingly reversed. The record is remanded for a new trial.

JOE C. LOSER, Jr., Special Judge, concurs.

O'BRIEN, Justice, dissenting.

I agree with the majority that an inventory search of defendant's automobile under the evidence in this case was unjustified. There is very little persuasive authority on this issue among either the State or Federal cases on the subject. The State relies principally on the United States Supreme Court case of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and the cases cited there, as authority to sustain the position that an inventory search was valid. It is essential to note that *Opperman* is extremely limited in its scope, holding that when vehicles are *impounded,* local police departments generally follow a routine practice of securing and inventorying the automobile's contents in response to three distinct needs:

(1) The protection of the owner's property while the vehicle remains in custody.

(2) The protection of police against claims or disputes over lost or stolen property.

(3) The protection of police officers from essential danger.

A fourth need suggested is to protect the vehicle and its contents against incidents of theft or vandalism. The decision explicitly spelled out that approval of the inventory search was premised on the fact that there was "no pretext concealing an investigatory police motive." It is significant to note that in *Opperman* it was said, "None of our prior decisions is dispositive of the issue whether the [4th] Amendment permits routine inventory 'searches' of automobiles." [1]

The record clearly discloses that the search in this case was initiated as part of the investigatory phase of the proceedings. It was obviously an exploratory search for evidence of the criminal offenses the officers believed had occurred. The search was initiated in conjunction with the arrest of defendant on a narcotics charge and the additional evidence of a possible robbery found in Room 118 of the motel. The search was begun by opening the locked trunk of the automobile. The vehicle was not yet in the custody of the police, and though in a semi-public place in the motel parking lot, was not on a public highway or street. The owner was present, and no waiver, or consent to the search was requested by or given to the officers. There was absolutely no evidence presented to the trial judge on which he could base the conclusion that there was an inventory search.

I do not agree that there was not probable cause or exigent circumstances under the facts of this case to proceed with a warrantless search of defendant's automobile. In a jury-out hearing it was disclosed the officers were initially called to the scene in response to a disturbance originating at the motel where defendant and his vehicle were found. Upon arrival they determined from the motel clerk that defendant had requested a key to Room 118 in the motel. His request had been denied because he was not a registered guest. Defendant was

1. 428 U.S. 378, 96 S.Ct. 3092, p. 3101, Powell, J., concurring.

found kicking on the door of Room 165 of the motel, shouting in profane language, when the police arrived. He was placed under arrest for disorderly conduct and public drunkenness. In the course of a search of his person a vial of pills was found which the officer took to be narcotics. He was also charged with possession of narcotics and advised of his rights. Room 118 was registered in the name of a person different from that mentioned by defendant when endeavoring to get the key. He claimed to have personal possessions in that room. The officer accompanied the desk clerk who opened the room to see if it was occupied. When the door was opened the officer observed two television sets in the room only one of which was the property of the motel.[2] The wires to the telephone had been spliced to a tape recorder. On the floor the officers found a spoon containing some white substance and several syringes, or hypodermic needles. They also found a man's wallet on the dresser and two sets of car keys. The wallet contained defendant's identification. On the presumption that the television was the fruits of a burglary the officers launched an investigation. A car bearing Arkansas license plates was pointed out to them as defendant's car by the young boy who was with him at the time of his apprehension. One set of the car keys fit the ignition of the automobile. The officers proceeded to make an inventory search of the car.[3]

The trial judge ruled that the search was good for two reasons. First there was probable cause and exigent circumstances to continue with the investigation and search the vehicle. Second the officers were in the process of impounding the vehicle and were entitled to make an inventory search prior to its impound.

The usual rule is that a search or seizure of a vehicle is not authorized without a warrant after it has completed its journey and is at rest on private premises. See *Fuqua v. Armour,* 543 S.W.2d 64, (Tenn. 1976). There is not any authority to the effect that this is an ironclad rule. Undoubtedly the law requires that each case must stand on its own merits. Police officers are frequently penalized for errors in judgment in the course of arrest, or in making searches of persons or properties, while carrying out their duties of law enforcement. There was certainly ample probable cause as well as exigent circumstances to warrant the search. In *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the United States Supreme Court said:

"Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. (Citations omitted). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

This case was followed by our own Supreme Court in *State v. Hughes,* 544 S.W.2d 99, (Tenn.1976). In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, (1971), this theory of the law is approved by the suggestion that when there is a criminal suspect close enough to an automobile to procure a weapon, or destroy evidence within it, the police may make a search of appropriately limited scope.

Under the facts considered by the trial judge the officers in this case found property belonging to the defendant in a motel room which he was endeavoring to enter by subterfuge. They found evidence of a felony by the presence there of the extra television as well as the tampering with the telephone. There was also the strong prob-

---

**2.** Testifying before the jury the desk clerk said she entered the room and saw the extra television set prior to summoning the police officer.

**3.** The officer testified it was police department procedure to seize an arrestee's automobile and conduct an inventory search prior to removal to a storage lot when an arrest was made involving contraband or apprehension of a burglar in the field.

ability of a narcotics violation manifested by the drugs and paraphernalia found on defendant and in the room. It was obvious defendant had a confederate in the vicinity who certainly was in a position to remove the car and its contents before a warrant could be obtained. To disallow this search by holding there was neither probable cause nor exigent circumstances would be to penalize a police officer for prompt, efficient and competent conduct under the facts of this case and would be a travesty on justice.

I would affirm the judgment of the trial court.