**Richard G. CHRISTMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6952.**

District of Columbia Court of Appeals.

Argued June 20, 1973.

Decided Feb. 1, 1974.

**474**

Martin D. Minsker, Washington, D. C., appointed by this court, with whom Nathan Lewin, Washington, D. C., also appointed by this court, was on the brief, for appellant.

William D. Pease, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Hamilton P. Fox, III, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and PAIR and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

For purposes of this appeal from a judgment of conviction for possession of a dangerous drug,[1] we accept the government's statement of the case.[2]

At approximately 10:15 p. m., on October 19, 1972, Officers Wilks and Exum of the Metropolitan Police Department while seated in a police cruiser parked on S Street, N.W., near the corner of 14th Street, observed a 1952 Ford station wagon proceeding in a northerly direction on 14th Street. The vehicle was occupied by two persons, later identified as appellant (the driver) and James Brown (a passenger). The police cruiser was turned onto 14th Street behind the station wagon and the officers noticed that the passenger "kept reaching under the seat of the auto . . . ." After seeing him bend over several times, the officers decided to subject the car to a "spot check" because, as Officer Wilks testified:

> . . . [T]he car was occupied by two younger men, and it was an older car, which is usually the type of car that doesn't have a steering wheel lock, a car easily stolen and, also, because the passenger kept digging down underneath the seat, so it could possibly mean that by leaning over he could be keeping the wires together if the car had been hot-wired, or something of that nature.

---

1. D.C.Code 1967, § 33–702(a)(4).

2. *Cf.* United States v. Page, D.C.App., 298 A.2d 233 (1972).

After proceeding several blocks on 14th Street, the station wagon was turned onto V Street, N.W., and the officers required the driver to stop at the curb, after which they alighted from the cruiser and approached the station wagon—Officer Exum on the driver's side and Officer Wilks on the passenger side. Appellant got out of the driver's seat and walked back toward Officer Exum who asked him for his license and the registration card for the vehicle. As Officer Wilks reached the passenger side of the car, he noticed that the passenger "again went under the seat of the car." Officer Wilks placed his hand on his gun and attempted to open the door, but found that he could not do so because the pushbutton on the door was missing—a fact which suggested to him that the vehicle could have been stolen by means of punching out the lock to gain access.

Keeping his hand on his gun, Officer Wilks instructed the passenger to get out of the car and place his hands on its top, and Officer Exum was asked to "keep an eye on him" while he (Wilks) investigated what the passenger appeared to be reaching for under the front seat. When the officer leaned into the automobile he noticed a plastic vial on top of the front seat and, upon reaching underneath the seat, he found a bottle of wine—three-fourths consumed. After placing the bottle on the floor, Officer Wilks "leaned back out of the car" and seized the plastic vial from the top of the front seat observing, as he picked it up, that it had a prescription label attached to it, that the label was "old and worn" and "had obviously been out of the

pharmacy for some time", and that it had two pills inside. He observed also that the name on the prescription label was Frances Christmas, identified at trial as appellant's mother, and that the prescription was for five tablets. The officer then stated that "the pills did not match the prescription." [3] Holding up the vial, the officer inquired whether appellant or Brown owned it and each "emphatically" denied ownership. Whereupon the officer opened the vial, removed the two pills and placed appellant and Brown under arrest for possession of suspected dangerous drugs. A timely pretrial motion to suppress the drugs was denied and, after trial without a jury, appellant was found guilty as charged. This appeal followed.

While appellant urges several reasons why the motion to suppress should have been granted, we need discuss only one, viz., whether under the circumstances [4] the seizure of the medicine vial and the examination of its contents were reasonable—measured by Fourth Amendment standards. Appellant contends that the seizure was unreasonable [5] and therefore violative of his Fourth Amendment rights. We agree and reverse.

■ The Supreme Court has made it crystal clear that any search or seizure conducted without a warrant is "*per se* unreasonable under the Fourth Amendment —subject only to a few well delineated exceptions." [6]

Included among the exceptions to the warrant requirement, insofar as either could have application in the case at bar,

---

3. The officer did not identify the drug appearing on the prescription label nor did he explain his statement that the pills found in the vial did not match the prescription.

4. *See* Palmore v. United States, D.C.App., 290 A.2d 573 (1972), aff'd on other grounds, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); Mincy v. District of Columbia, D.C. App., 218 A.2d 507 (1966).

5. *See* Tyler v. United States, D.C.App., 302 A.2d 748 (1973); Watts v. United States,

D.C.App., 297 A.2d 790 (1972); Dickerson v. United States, D.C.App., 296 A.2d 708 (1972).

6. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *accord*, Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

are (1) a search incident to a lawful arrest (Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); McGee v. United States, D.C.App., 270 A.2d 348, 349 (1970)); (2) a search conducted on probable cause for a belief that the automobile contained a weapon or destructible evidence subject to seizure (Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cf.* Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Watts v. United States, D.C.App., 297 A.2d 790, 792 (1972); and *see generally* cases in Annot., Warrantless Search of Automobile, 26 L. Ed.2d 893 et seq.); (3) the search of an automobile which has been impounded (Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); and (4) the seizure from an automobile, upon probable cause, of an object in plain view of an officer who had prior justification for the initial intrusion (Harris v. United States, *supra;* United States v. Wheeler, 148 U. S.App.D.C. 204, 459 F.2d 1228 (1972)).

■ In the case before us appellant had not been, prior to the seizure of the medicine vial and the examination of its contents, placed under arrest nor had he been charged with violation of any law. Consequently, there was not even pretense that the search of the automobile and the seizure of the medicine vial were incident to a lawful arrest. *See* Watts v. United States, *supra.* Nor was there pretense that the officer, prior to his intrusion into the automobile, had probable cause for a belief that it contained contraband or other material subject to seizure. The sole concern of the officer was that the automobile might have been stolen and that the passenger " . . . by leaning over . . . could be keeping the wires together as if the car had been hot-wired, or

something of that nature." [7] Thus the only theory upon which the seizure of the medicine vial and the examination of its contents may be sustained is that the vial (although not its contents) was in plain view.

But even under such circumstances, the Court admonished in Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 "that plain view *alone* is never enough to justify the warrantless seizure of evidence." Absent therefore probable cause to believe at the time of the initial intrusion that the medicine vial contained contraband or that it in some way endangered the officer's safety, he had in our opinion no more authority to seize the vial and examine its contents than he would have had, under the circumstances, to seize and examine the contents of a woman's handbag, a man's attache case, or a grocery bag. Coolidge v. New Hampshire, *supra;* Dyke v. Taylor Implement Mfg. Co., *supra;* Henry v. United States, *supra;* Backstrom v. United States, D.C.App., 252 A.2d 909 (1969).

The unequivocal testimony of Officer Wilks was that when the door on the passenger side of the automobile was opened all that he saw was " . . . a plastic vial . . . . I was still concerned, on more with what was under the seat than the plastic vial . . . . " Thus, it is beyond dispute that the officer did not have, prior to the seizure, probable cause for a belief that the medicine vial contained a prohibited drug. Moreover, unlike the situation in State v. Waltz, 61 N.J. 83, 293 A.2d 167 (1972), and People v. Childs, 4 Cal.App.3d 702, 84 Cal.Rptr. 378 (1970), upon which our dissenting colleague so much relies, the officer in the case at bar apparently had no special training or experience in the "area of narcotics." Certainly, there was no testimony by either officer that—of his own knowledge and based upon his own experience—such medicine

---

7. Before the intrusion into the automobile, one of the officers apparently satisfied himself that the automobile had not been stolen and that the operator had a valid operator's permit.

vials with prescription labels attached were used to transport narcotic drugs.[8]

What this record discloses therefore is the very police practice so sharply condemned in Coolidge v. New Hampshire, *supra,* 403 U.S. at 466, 91 S.Ct. at 2038, the Court—pointing out that even when there is justification for the initial intrusion—

> the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

Speaking perhaps with even greater clarity on the general subject, the Supreme Court recently declared that:

> [T]he Carroll doctrine[9] does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search. As Mr. Justice White wrote for the Court in Chambers v. Maroney, . . . "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement . . . ." Almeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973). [Footnote omitted.]

Having viewed the record in the case at bar, as we were required to do, in the light most favorable to the government, we are constrained to regard as justified the initial intrusion into the automobile. However, once it was determined that the automobile had not been stolen, that the driver had a valid operator's permit and registration card, that nothing was beneath the passenger's seat or in plain view which endangered the safety of the officers or was otherwise subject to seizure, the police function should have been at an end. What we condemn, therefore, is not the initial intrusion into the automobile but rather the exploratory rummaging which followed without probable cause. Cf. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

As (then) Chief Judge Hood observed in Backstrom v. United States, *supra* 252 A.2d at 910:

> There are numerous cases in this jurisdiction and elsewhere dealing with the legality of the seizure of articles found in automobiles. We need not enter into a discussion of all those cases. It is enough to say we found no case whose facts fit the present case. Here the automobile itself had not been lawfully seized by the police, and the seizure of the [vial] was not incident to [an] arrest. Neither was this a case where articles of the same description as recently stolen goods were observed in the automobile. Nor is this a case where a gun, numbers slips or other forbidden articles are found in plain view. . . . [Footnotes omitted.]

*See and compare* Green v. United States, D.C.App., 275 A.2d 555, 556–557 (1971).

We have been cited to no case nor have we found any decided by the Supreme Court of the United States, the Court of Appeals for this Circuit, or this court which has sanctioned the seizure on less than probable cause of any such non-suspicious object, even when in plain view. Harris v. United States, *supra,* and United States v. Wheeler, *supra,* are distinguishable on their facts. In the *Harris* case the registration card of the robbery victim was observed in plain view, but only after the arrest of the robbery suspect and after the

---

8. In determining the existence of probable cause in warrantless search and seizure cases, the expertise of the officer in narcotics is generally regarded as an important consideration. United States v. Wheeler, *supra*;

United States v. Johnson, 143 U.S.App.D.C. 215, 442 F.2d 1239 (1971).

9. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

automobile had been impounded. But more than this, the observation of the card in plain view was not in the course of a search but rather during a justifiable intrusion for the purpose of protecting the interior of the car while in police custody.

In *Wheeler* an unsealed envelope was observed in plain view and, when opened, was found to contain 34 capsules of a substance later identified as heroin. However, prior to the seizure of the envelope, Wheeler had been arrested on weapon and traffic charges and the automobile was to be impounded with a consequent inventory of its contents. To this end the officer entered the front seat of the automobile and observed in plain view in the ashtray the envelope. Holding that there was probable cause for the seizure of the envelope and the examination of its contents, the court regarded the surrounding circumstances as controlling, *viz.,* "the size and color of the envelope, its apparent bulk and location in the ashtray of the car, and . . . the officer's experience in having found narcotics in this type envelope on prior occasions." In addition, there was the circumstance that Wheeler was, prior to the seizure, placed under arrest on the weapon and traffic charges.

Wise v. United States, D.C.App., 277 A. 2d 476 (1971), involved the investigatory stop of an automobile following receipt of a report of a robbery. Unable to produce an operator's permit, appellant attempted to transfer capsules from his shirt pocket to his trouser pocket and, in the process, certain of the capsules dropped and came into plain view of the police officer. The officer then ordered appellant out of the car and seized the capsules in plain view and others from appellant's person. Because the officer had the right to be where he was when he observed in plain view the capsules, we sustained the seizure.

The officer in the case at bar—we have been constrained to say—had the right to be where he was when he observed in plain

view the medicine vial but, as pointed out above, the contents were not in plain view and the officer was without probable cause to believe that such contents were subject to seizure as contraband.

In United States v. Johnson, *supra,* unlike the case at bar, there were traffic violations, flight under suspicious circumstances, the apprehension of the driver of the automobile and then the observation in plain view of "little white capsules" by a veteran police officer with prior narcotics experience.

Our dissenting colleague calls attention to cases decided recently in other jurisdictions and it is suggested that they persuade approval of the seizure in this case. Upon examination of those cases, we find each to be unpersuasive. State v. Waltz, *supra,* must be confined to its own facts which, as indicated above, differ substantially from the facts in the case at bar. In that case an officer caused the driver of a truck to stop intending to give him a citation for speeding. Observed in plain view on the floor at the front of the truck was a small white bottle identified as a "white, plastic Bufferin bottle." The officer had received special training in the enforcement of narcotics laws and upon looking through the outside of the bottle he could see that it contained something other than ordinary Bufferin tablets, specifically, "grayish pills and a piece of aluminum foil." The officer then opened the bottle and removed five white pills and vegetation wrapped in foil. The officer's testimony, which the court no doubt considered as crucial, was that, in his experience, bottles similar in size and nature had been found to contain narcotics. It seems needless to say again that, aside from an inquiry as to the ownership of the medicine vial, the officer in the case now under consideration attached to it little, if any, significance until he opened the vial and examined its contents.

Much to the same effect as State v. Waltz, *supra,* is People v. Childs, *supra.*

There a police officer observed in the early morning hours a vehicle with out of state license plates operated in an erratic manner and in excess of the speed limit. Intending only to warn the operator, the officer caused him to stop the vehicle. During the conversation which followed, the officer observed in plain view on the floor of the vehicle " . . . a dark colored small bottle resembling those in which pills are found for medication." The bottle was labeled "Tranquilizers". The officer could see pills inside which he could not identify. He thereupon opened the bottle and found inside "yellow scored tablets" which he suspected were illicit drugs. The officer had received special training and instructions in narcotic drugs and, in addition, had been involved in some 45 narcotic drug and marijuana cases. In sustaining the validity of the seizure, the court said:

> The combination of the circumstances in this case made it the duty and responsibility of the officer to see whether or not the presence of suspected dangerous drugs, legal or illegal, might explain the peculiar behavior of the driver of the vehicle. The protection of the motoring public demands that much of the officer. [People v. Childs, *supra*, 4 Cal.App.3d at 702, 84 Cal.Rptr. at 381.]

Because the *Waltz* and *Childs* cases are clearly distinguishable from the case at bar, the holdings in the two cases must be confined to their own peculiar facts and the surrounding circumstances. At best, the holdings may be considered only as persuasive authority which cannot stand against the imperative authority which is Coolidge v. New Hampshire, *supra*, and Watts v. United States, *supra*.

Interestingly enough, in Thomas v. Superior Court for County of San Joaquin, 22 Cal.App.3d 972, 99 Cal.Rptr. 647 (1972), decided subsequent to People v. Childs,

*supra*, the California court reached a different result on a similar probable cause issue. Involved in the *Thomas* case was the seizure of a "hand rolled cigarette" in plain view on the rear seat of an automobile. The officer "untucked" one end of the cigarette, smelled the contents and, detecting an odor of marijuana, arrested the driver for possession of the drug. Holding that the drug should have been suppressed as the product of an unreasonable search and seizure, the court pointed out first that "[t]he fact that petitioner did not have a driver's license could not serve as a basis for . . . arrest or . . . seizure of the cigarette. . . . " The court concluded that:

> Where, as here, there is no evidence that the contents of a cigarette were visible, those contents (even if contraband) were not "in plain view." Standing alone, "[t]he plain view of a simply suspicious-looking or unusual object which itself is not contraband, does not justify its seizure without a warrant." (People v. Nickles (1970) 9 Cal.App.3d 986, 992, 88 Cal.Rptr. 763, 767.)

> We have not been referred to—nor has our own research disclosed—any appellate case in the United States which holds that the mere presence of a hand-rolled cigarette furnishes probable cause for an arrest, search, or seizure on the theory that the cigarette indicates contraband. . . . [Thomas v. Superior Court for County of San Joaquin, *supra* at 22 Cal.App.3d 976, 99 Cal.Rptr. 650.]

Enough has been said to demonstrate that the case authority relied upon by appellant and that cited in the dissenting opinion are neither controlling nor persuasive. We conclude, therefore, that the seizure in this case cannot be sanctioned when measured by any Fourth Amendment standard as limited by any one of the ex-

ceptions to the warrant requirement discussed above.[10]

Reversed.

YEAGLEY, Associate Judge (concurring) :

I concur in the opinion of the court insofar as it finds no "plain view" basis for the seizure of the medicine vial from appellant's auto. I have some difficulty, however, in finding circumstances present here to justify the initial intrusion into the car. The clear right of the officers to make a spot check justified them in asking the appellant to produce his driver's permit and car registration,[1] which the officer said was done promptly. Those papers being in order, the earlier furtive movements of the passenger below the seat and the presence of a hole in the front door latch do not, in my view, provide the ingredients needed to make a search of the car reasonable lacking a prior custodial arrest. Watts v. United States, D.C.App., 297 A.2d 790 (1972), and authorities cited therein.

REILLY, Chief Judge (dissenting) :

I am unable to agree with the majority decision. While it recognizes one well established exception to the general rule forbidding warrantless searches of automobiles, *viz.*, that " . . . objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence," Harris v. United States, 390 U.S. 234 at 236, 88 S.Ct. 992 at

993, 19 L.Ed.2d 1067 (1968)—a doctrine recently re-emphasized by the Supreme Court [1]—it seems to create a new exception to such exception. Its underlying premise is that the object seized in this instance—a vial containing dangerous drugs —was an "innocent looking nonsuspicious article" and therefore even though it was lying in plain view on the front seat of the car, the officer had no right to take it from the seat and inspect it. The majority concede that in holding up the vial, the officer did observe that the prescription label was "old and worn" and that the pills inside "did not match the prescription." Obviously at that point the officer had every reason to believe that it contained illicit material, for D.C.Code 1973, § 33–413, makes it unlawful to carry even prescribed narcotic drugs except in the original container, and §§ 33–412 and 33–702 of that title impose stringent labeling requirements on the dispenser. The opinion avoids the impact of this testimony, however, by holding that when it was picked up the *"vial was 'seized' at that point"* [italics supplied].

If this view of the matters becomes a fixed rule, we have severely hobbled the efforts of the police to enforce laws against traffickers in narcotics. It would mean that only when an object like a handgun, a bomb, or a stick of dynamite falls within the view of an officer, could he pick it up and use it as evidence against the possessor. It is clear that all containers of narcotics, whether in capsule, pill, or powdered form, look no different from the ordinary containers of nonprescription drugs or such powdered substances as prophylactics, unless one can hold them

---

10. Since this case was argued, appellant filed a supplemental memorandum drawing our attention to two decisions handed down by the Supreme Court during this interval. United States v. Robinson, —— U.S.——, 94 S.Ct. 467, 38 L.Ed.2d 427, and Gustafson v. Florida, —— U.S. ——, 94 S.Ct. 488, 38 L.Ed.2d 456, both released on December 11, 1973. We have examined these opinions and do not regard either as having a bearing on the issue raised by this case, since both opinions were directed

at the scope of search incident to a custodial arrest. All judges in this division concur in this observation.

1. *See* Palmore v. United States, D.C.App., 290 A.2d 573, 583 (1972), aff'd on other grounds, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

1. *See* Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

close enough to read the labels and compare them with the contents.

In *Harris, supra,* the leading case on the "plain view" rule, the object seized was a registration card lying on the floor of an automobile. This was later identified as having been taken from a stolen wallet. But obviously the officer was unaware that it did not belong to the car owner until he had picked it up and read the name typed or printed on it.

The notion that an object which might contain illicit drugs is immune from on-the-spot inspection is not supported by decisions in this jurisdiction. *See* Wise v. United States, D.C.App., 277 A.2d 476 (1971), where officer observed occupant of car stopped for unrelated reason placing capsules in pocket; United States v. Johnson, 143 U.S.App.D.C. 215, 442 F.2d 1239 (1971), capsules scattered on floor of car halted for traffic violation.

Similar seizures have been upheld in other jurisdictions. In State v. Waltz, 61 N.J. 83, 293 A.2d 167 (1972), an officer stopping a speeding van noticed a Bufferin bottle on the floor, picked it up, and in looking through the bottle saw that it contained pills other than Bufferin tablets, and tinfoil. In People v. Childs, 4 Cal. App.3d 702, 84 Cal.Rptr. 378 (1970), also a traffic stop case, the officer observed a small pill bottle labeled "tranquillizers" lying on the car floor. He picked up the bottle, opened it and found it held narcotic pills.

In short, courts both in this jurisdiction and elsewhere have found no difficulty in distinguishing police inspection of the kind of vials or bottles dispensed by pharmaceutical manufacturers or apothecaries from the seizure of such objects as suit cases, valises, and handbags—the carriage of which in an automobile would normally provide no ground for suspicion. Our decision in Backstrom v. United States, D.C. App., 252 A.2d 909 (1969), upon which the majority opinion relies so heavily, falls into the latter category, for the object suppressed was an ordinary cigarette case, not a vial or a glass medicine bottle. In *Backstrom,* appellant was a traffic offender unable to post collateral, who was searched prior to being placed in a cell. A pill bottle containing 58 unmarked tablets was found on him. Being dissatisfied with appellant's explanation that these tablets were vitamins, the officer remembered seeing a cigarette case in the car, went out, retrieved it, and, upon emptying the contents, discovered marijuana. It was this latter seizure which the government tried to justify on the plain view theory, the cigarette case having been clearly visible at the time of the arrest when the driver brushed it off the front seat to the floor. It was this article and its contents which the appellant vainly sought to suppress in the trial court. In holding that it was error not to grant the suppression motion, the court's reference to the innocent nature of the object seized pertained to the cigarette case, not the pill bottle. Hence the *Backstrom* case is clearly distinguishable from the one before us.