## 39448. KEY v. THE STATE.

ORDER OF COURT

Upon consideration of the application for certiorari filed to review the judgment of the Court of Appeals in this case, it is ordered that the writ be hereby denied.

*All the Justices concur, except Smith and Bell, JJ., who dissent.*

ORDERED JANUARY 11, 1983.

*O. L. Crumbley,* for appellant.

*Willis B. Sparks III, District Attorney, George F. Peterman III, Assistant District Attorney,* for appellee.

SMITH, Justice, dissenting.

I dissent to the denial of this application for writ of certiorari to the Georgia Court of Appeals.

A Bibb County Deputy Sheriff was dispatched by radio to investigate a person in a car parked on a roadside in Macon at approximately 2:40 a.m. on August 4, 1981. Upon arrival at the reported location, the officer observed a Chevrolet Camaro parked as described with two white males inside. He approached the car and asked the occupants their reason for being there. They responded that they were waiting for a girl to come home. The officer then ordered them to get out of the car and made them stand behind their vehicle. He asked for identification, which they produced.

Seeing an object in the back seat of the car he suspected to be a person hiding under a blanket, the officer again approached the car and "reached in and checked" to see if his suspicion was correct. It was not. The suspicious object was a sleeping bag. The officer then observed an ice chest sitting in the floorboard and "checked it." He found nothing but a can of beer inside. He also saw another beer can on the floorboard on the driver's side.

The officer then walked around to the driver's side of the car and, "looking in through the window" with the aid of his flashlight, he "observed a clear plastic bag with a green, leafy substance laying [sic] in the floorboard in front of the driver's seat." He entered the car and seized the suspected marijuana. He then searched the passenger compartment of the car and found a quantity of suspected marijuana seeds, a hand rolled cigarette and another plastic bag full of suspected marijuana. The officer told appellant to open the trunk of the car, and five more bags of suspected marijuana were found there. Appellant and his companion were then placed under arrest.

"[P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles." Delaware v. Prouse, 440 U. S. 648, 663 (99 SC 1391, 59 LE2d 660) (1979). The court in Prouse concluded by stating, "We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." Id. at 663.

The evil spoken of in Prouse, "the unbridled discretion of police officers" in dealing with an automobile and its occupants, permeates this case. Under these facts it must be noted that no crime had been reported in the area, nor was one committed or about to be committed in the presence of the officers. For this reason there was no probable cause for the warrantless exploratory search and it was uncalled for and illegal.

In Christmas v. United States, 314 A2d 473 (D.C. Cir. 1974), police stopped an automobile based on an officer's concern that it might be stolen and his observation that the passenger in the car kept reaching under the seat of the auto, possibly to hot-wire the car. The officers ordered two men out of the car, and when one officer reached underneath the car seat, he noticed a plastic vial lying on top of the seat. The men were arrested and later convicted for possession of illegal drugs discovered in the vial. On appeal, the court reversed, holding that the search was unreasonable under the Fourth Amendment. Noting that only the "plain view" doctrine could justify the officers' actions, the court concluded that the search of the vial was an illegal extension of the original, limited intrusion into the automobile. "What this record discloses therefore is the very police practice so sharply condemned in Coolidge v. New Hampshire . . . the Court [in Coolidge] pointed out that even when there is justification for the initial intrusion, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Id. at 477.

Likewise, in Faulkner v. State, 549 SW2d 1 (Tex. Crim. 1976), the officers' attention was drawn to the vehicle because it was traveling slowly, had out-of-county tags, and its occupants were conscious of the officer's proximity. After the car was stopped the driver got out and immediately displayed a valid license. The court held that the subsequent act of shining a light into the car was improper in that it went beyond the purpose for which the stop was made.

The officer's misconduct here is indistinguishable from that proscribed by these cases. Acting on the basis of a radio dispatch, the officers approached Key's parked car, ordered its two occupants out, and demanded identification. Appellant complied. The officer, observing a person-like figure covered by a blanket on the back seat, reached inside the car and discovered it was just a sleeping bag. From this point the officer proceeded to conduct a plainly illegal exploratory search of the automobile and its contents. He first pried open the cooler, then walked around the car where he flashed a light into the front seat and discovered the contraband. Assuming arguendo that the initial, limited search of the blanket was permissible under the "plain view" doctrine, all that followed clearly exceeded the officer's authority to search. "What we condemn, therefore, is not the initial intrusion into the automobile but rather the exploratory rummaging which followed without probable cause." Christmas v. United States, supra, at 477. See also Barlow v. State, 148 Ga. App. 717 (252 SE2d 214) (1979).

I cannot agree with that portion of the Court of Appeals' opinion which implies that reviewing courts may sanction "momentary unlawful intrusions" by police. As the Supreme Court has eloquently stated: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." Boyd v. United States, 116 U. S. 616, 635 (6 SC 524, 534, 29 LE 746) (1886). The trial court's denial of Key's motion to suppress was erroneous, and this application should be granted.