Adonis HICKS, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–1740.

District of Columbia Court of Appeals.

Submitted Feb. 18, 1997.
Decided Oct. 2, 1997.

PCP, but not guilty of the cocaine charge.[2] On appeal, Hicks argues that the trial court erred in denying his motion to suppress the drugs and statements. Specifically, he contends the challenged evidence was the fruit of his illegal arrest by the police. He also contends that the statement he gave was the result of police coercion. The government concedes for purposes of this case that the police seized Hicks without probable cause or reasonable suspicion; however, it contends that the exclusionary rule does not bar admission of the physical evidence because the drugs were in plain view, and their discovery was not a fruit of the violation of his Fourth Amendment rights. We hold that the discovery of the drugs was not sufficiently attenuated from the unlawful police action to purge the taint; therefore, the physical evidence must be suppressed. We find no error in the trial court's ruling denying Hicks' motion to suppress statements.

Frazer Walton, Jr., Washington, DC, for appellant.

Maureen Bailey, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas C. Black and Stephen A. Best, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

WAGNER, Chief Judge:

Appellant, Adonis G. Hicks, was charged with unlawful possession with intent to distribute cocaine and phencyclidine (PCP), both in violation of D.C.Code § 33–541(a)(1) (1993).[1] Following a hearing, the trial court denied Hicks' motion to suppress tangible evidence and statements. After a trial on the charges, the trial court found Hicks guilty of possession with intent to distribute

## I.

### The Suppression Hearing

Officer Michael Jewell testified that he and Investigator Andrews were in a patrol car driven by Investigator Forrester when they observed Hicks sitting in the driver's seat of a car with Virginia tags in the 200 block of K Street, S.W. Officer Jewell testified that he was familiar with the area as the "largest marijuana area in the First District." He further testified that based on his five years in vice, he knew that "80 to 90 percent of the people" coming into the area to buy drugs were from Virginia and Maryland. Officer Jewell testified that when he saw Hicks sitting in a car with Virginia tags, "the first thing on my mind [was], they're probably out here buying weed." Officer Jewell also testified that he noticed that the car had a cracked windshield. The officers pulled their vehicle in front of Hicks' vehicle to prevent him from leaving the area while they investigated further.

---

1. Appellant was also charged with possession of ammunition, in violation of D.C.Code § 6–2361 (1996), but the trial court granted the government's motion to dismiss this charge.

2. Hicks was placed on probation under the provisions of the Youth Rehabilitation Act, D.C.Code § 24–803(a) (1996), with the special condition that he undergo inpatient drug treatment.

Officer Jewell testified that because he was aware of many shootings in the area, he had his gun out at his side to protect himself and the other officers. He said that Lieutenant Clay also had his gun drawn, but Investigator Forrester did not. Officer Jewell could not recall if other officers, who were on the scene, had their weapons drawn. He testified that as he approached Hicks' car, he observed, in the center of the two front seats where the armrest would have been, a box of blunts and that he knew blunts were used to smoke marijuana. Next to the blunts, the officer saw a vanilla extract bottle which he knew was used commonly to store PCP. According to Officer Jewell, he asked Hicks whether he had drugs in the car, and Hicks said that he did not. Officer Jewell asked him for permission to search the car, and Hicks agreed. Officer Jewell asked Hicks to step out of the vehicle, and Hicks complied.

During the search of the car, Officer Jewell opened the vanilla extract bottle, and he recognized the odor of PCP. Officer Jewell then recovered the box of blunts and a drawstring bag from the front seat. Inside the bag were two plastic bags which contained a white rock substance that field tested positive for cocaine. One bag weighed approximately twenty grams; the other weighed approximately three grams.[3] The officers placed Hicks under arrest.

Sergeant Gerald Gene Neill, Jr. testified that at the police station, he advised appellant of his *Miranda*[4] rights. Officer Neill asked Hicks if he understood his rights, and he said that he did. The officer gave Hicks a rights card, which Hicks reviewed and signed, indicating that he understood his rights.[5] Hicks waived his rights and signed the rights card and gave a statement, which he also signed.

Hicks testified that he was in the passenger seat of his car drinking juice when the police approached him with their guns drawn and pointed toward the car. He testified that the officers asked him "where was the weed. I know you got the marijuana. Where is the marijuana." He said that the police told him to get out of the car, which he did, and the officers patted him down and searched his car. According to Hicks, the vanilla extract bottle was under the armrest, and the box of blunts was on the seat of the car. He denied knowing that the drawstring bag was in the car or its contents.

Hicks testified that he could not recall whether the officer read him his rights before or after requesting a statement. He stated that the officer told him that his statement would "help me out as far ... as the arrest was concerned." Hicks also stated that he had smoked PCP during the preceding week, but not that night. He testified that he did not know whether he was suffering from any effects of PCP when he signed the rights card.

In denying the motion to suppress, the trial court made findings essentially crediting the testimony of the police officer. The court found that Hicks had been seated in the driver's seat of the vehicle with Virginia tags, in an area known for marijuana sales to buyers, primarily with Maryland or Virginia tags. The court found that "there was also a crack in the ... windshield of [Hicks'] car." The court also found that the officer had his gun out when he approached the car, but that it was not pointed at Hicks. The court stated:

> [t]he police had a reason to detain and investigate further at the point at which they went up to the car and saw the vanilla

**3.** Officer Jewell found a box of .26 caliber ammunition under the passenger seat, which was the subject of the dismissed count.

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** According to Officer Neill, he advised Hicks that he was under arrest and that

> [b]efore we ask any questions you must understand what your rights are. You have the right to remain silent. You're not required to say anything to us at anytime or answer any questions. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice, and have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be provided for you. If you want to answer questions now without having a lawyer present, you have a right to stop us at anytime. You also have a right to stop us at anytime until you talk to a lawyer.

bottle and ... the blunts box on the seat of the car. At that point they were certainly authorized to ask Hicks to step out.

The court specifically found that Hicks denied there were drugs in the car and consented to the search.

The trial court determined that Hicks voluntarily made the statement to the police. The court did not find "enough evidence to support any conclusion that [Hicks] might have been intoxicated or that his will [was] overborne because of his past usage of PCP." [6]

## II.

Hicks argues that the trial court erred in denying his motion to suppress the drugs because the police did not have probable cause to order him from his car and search it, or probable cause or reasonable suspicion to believe that he had committed a crime. For purposes of this case, the government concedes that the manner in which the officers blocked Hicks' vehicle and approached him with guns drawn as he sat in the car amounted to a seizure which was not supported by probable cause or reasonable suspicion. *See In re T.T.C.*, 583 A.2d 986, 988 (D.C.1990); *Kelly v. United States*, 580 A.2d 1282, 1285 (D.C.1990). Further, the government also does not contend that the presence of the cracked windshield justified the seizure.[7] The government contends that, even assuming that the seizure of Hicks was without legal justification, the discovery of the PCP in plain view was not a fruit of the illegal seizure. Once the officers observed the suspected contraband, the government argues, they had probable cause for the search of the car and the seizure of the drugs.

■ Our scope of review of a trial court's denial of a motion to suppress is limited. Deference must be given to the trial court's factual findings. *Lawrence v. United States*, 566 A.2d 57, 60 (D.C.1989). The facts and all reasonable inferences therefrom must be viewed in favor or sustaining the trial court's ruling. *Peay v. United States*, 597 A.2d 1318, 1320 (D.C.1991) (en banc). However, our review of the trial court's legal conclusions is *de novo*. *Lewis v. United States*, 632 A.2d 383, 385 (D.C.1993).

■ Since the government concedes that Hicks was illegally seized, we must determine whether the drugs must be suppressed as the fruit of the illegal detention. If the evidence was obtained by exploitation of the violation of Hicks' Fourth Amendment rights, then the evidence must be suppressed. *New York v. Harris*, 495 U.S. 14, 18–19, 110 S.Ct. 1640, 1643–44, 109 L.Ed.2d 13 (1990); *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). The question is whether the evidence was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417 (citation omitted).[8] When determining

---

6. The evidence at trial was consistent with the evidence at the suppression hearing. Detective Charles Culver testified about the drugs. Both Officer Jewell and Hicks testified consistent with their testimony at the suppression hearing.

7. In light of the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the reason for the government's concession in this regard is not entirely clear, since its brief was filed after the *Whren* case was decided. In *Whren*, the Supreme Court held that the temporary detention of a motorist for a civil traffic violation by plainclothes officers upon probable cause is not unreasonable in the context of the Fourth Amendment, even if the officer's ulterior motive was to investigate other suspected illegal behavior. 517 U.S. at 813, 116 S.Ct. at 1774. The government's position with respect to whether the cracked windshield on a vehicle registered in Virginia constitutes an infraction of any District of Columbia regulation has not been stated. *See Russell v. United States*, 687 A.2d 213 (D.C.1997) (rejecting the argument that the law of the District does not require an inspection sticker on a vehicle registered in Virginia while driving in the District). However, the trial court explicitly found that the officers did not stop Hicks because of any broken windshield, and the government accepts this finding.

8. In *Wong Sun*, the Supreme Court considered whether it should exclude narcotics taken from one defendant as the fruit of statements which were illegally obtained from another defendant and which directly led to the discovery of the narcotics. 371 U.S. at 487, 83 S.Ct. at 417. Because the government could not show either that it learned of the evidence from an independent source or that the discovery of the evidence had "become so attenuated as to dissipate the

the admissibility of evidence derived from "a chain of causation that began with an illegal arrest," the Supreme Court has declined to adopt a "but for" test, holding, instead that the "[t]he penalties visited upon the Government ... because its officers have violated the law must bear some relationship to the purposes which the law is to serve." *Harris,* 495 U.S. at 14, 17, 110 S.Ct. at 1641, 1642–43 (citations and internal quotations omitted). The exclusionary rule would not bar evidence "arrived at by an independent source." *Spinner v. United States,* 618 A.2d 176, 178 (D.C.1992) (citations and internal quotations omitted).

The government argues that the seizure had no bearing on Officer Jewell's ability to observe the extract bottle and blunts lying in plain view on the front seat of Hicks' car, and therefore, the police obtained nothing as a result of the illegal seizure. The government relies on *Harris, supra.* In *Harris,* at issue was the admissibility of statements of the defendant made after his arrest on probable cause and subsequent to a warrantless, non-consensual entry into his home to arrest him on a felony, which is in violation of the Fourth Amendment. 495 U.S. at 17, 110 S.Ct. at 1642–43; *see also Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).[9] The court in *Harris* declined to adopt a "per se" or "but for" rule which would render inadmissible any statements or tangible evidence which comes to light through a chain of causation beginning with an illegal arrest. 495 U.S. at 17, 110 S.Ct. at 1642–43. Since the police had probable cause to arrest Harris once he left his home, the court determined that the statement that he made thereafter "was not the product of being in unlawful custody" or the "fruit of having been arrested in the home *rather than someplace else ...."* *Bryant v. United States,* 599 A.2d 1107, 1111 (D.C. 1991) (citation omitted). Therefore, the court did not find it necessary to engage in an attenuation analysis. *Bryant,* 599 A.2d at

1111; *see also Harris, supra,* 495 U.S. at 18–19, 110 S.Ct. at 1643–44.

■ This case is different from *Harris.* Here, the police were in a position to view the contraband in Hicks' car only because of the illegal seizure. Had they not blocked his car and approached him with weapons drawn so that he could not leave, they would not have seen the suspected drugs. It is "an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). Contraband in plain view of the police is subject to seizure and admissible into evidence, provided the officer has a right to be in a position to view it. *Vance v. United States,* 399 A.2d 52, 58 (D.C.1979) (citing *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968)). The plain view exception also requires (1) that the officer "have a lawful right of access to the object...." and (2) that the "incriminating character" of items seized be "immediately apparent." *Horton, supra,* 496 U.S. at 136–37, 110 S.Ct. at 2307–08 (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 466–71, 91 S.Ct. 2022, 2038–41, 29 L.Ed.2d 564 (1971)). " '[P]lain view *alone* is never enough to justify the warrantless seizure of evidence.' " *Christmas v. United States,* 314 A.2d 473, 476 (D.C.1974) (quoting *Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039). Rather, the officer must have "prior justification for the initial intrusion." *Id.*

■ In the case now before us, concededly, there was no probable cause or reasonable suspicion to warrant the initial intrusion. Therefore, the officer was not lawfully in a place where he could view the evidence. It is insufficient that the plain view of the blunts and bottle "might have provided probable cause to search had the initial stop been legal." *United States v. Grant,* 822 F.Supp. 1270, 1277 (W.D.Tenn.1993). Here, the view-

---

taint," the court held that the evidence must be excluded. *Id.*

9. In *Payton,* the Supreme Court held that the warrantless, nonconsensual entry of the police

into the suspect's home in order to make a routine felony arrest violates the Fourth Amendment.

ing of the evidence did not purge the taint of the illegal stop.[10]

■ There are several factors for consideration in determining whether the primary taint of illegal police conduct has been purged: (1) the temporal proximity of the illegal seizure and the discovery of the contraband; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Grant, supra,* 822 F.Supp. at 1277 (citing *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982)). Examining the circumstances of this case against these factors, the discovery of the drugs is not sufficiently attenuated to remove the taint. The officer's discovery of the drugs bears a close relationship to the illegal arrest. Officer Jewell saw the contraband virtually simultaneously with the blocking of Hicks' vehicle and the approach of the officers with their weapons drawn. Thus, there were no intervening circumstances. The officers undertook this illegal seizure because Hicks' vehicle had a Virginia tag, and they suspected that anyone from Virginia parked in that area of the District, even at 6:45 p.m. on an October evening, was there to buy drugs. Their purpose and illegal action was particularly flagrant under the circumstances. The officers were in a position to observe the contraband only because of their unlawful action. There

was no independent source and no attenuating circumstances resulting in dissipation of the taint of the illegal seizure.

■ Hicks' consent to the search does not alter the outcome. It was extracted under those same conditions, and cannot be regarded as other than coerced. A consent obtained after an illegal seizure is not valid "unless it can be shown that the consent was in fact 'sufficiently an act of free will to purge the primary taint' of the unlawful seizure." *McGann v. Northeast Ill. Regional Commuter R.R. Corp.,* 8 F.3d 1174, 1184 (7th Cir. 1993) (quoting *Wong Sun, supra,* 371 U.S. at 486, 83 S.Ct. at 416–17). Therefore, Hicks' consent was vitiated by the unlawful seizure. *Id.* For all of the foregoing reasons, we conclude that the motion to suppress tangible evidence should have been granted.

## III.

■ Hicks argues that the trial court erred in denying his motion to suppress the statement he gave at the police station.[11] He contends that he was psychologically coerced into making the statement by a promise of leniency and by being placed in fear by the police and that he might have been under the influence of drugs when he made the statement.[12] We find no error in the trial court's ruling that the statement was voluntary.

---

**10.** "Standing alone, the plain view of a simply suspicious-looking or unusual object which itself is not contraband, does not justify its seizure without a warrant." *Christmas, supra,* 314 A.2d at 479 (citation, internal quotation marks and alterations omitted). In that case, this court ruled that the seizure of a plastic medicine vial, the contents of which the officer could not see, was not justified under the plain view doctrine because the police "officer was without probable cause to believe that such contents were subject to seizure as contraband." *Id.* at 477–78. In so deciding, the panel in *Christmas* pointed out that the officer had "no special training or experience in the 'area of narcotics,'" and there was no testimony of the officer's own knowledge, based on experience that "such medicine vials with prescription labels attached were used to transport narcotic drugs." *Id.* at 476–77 (footnote omitted). The opinion discussed several cases from other jurisdictions which were distinguished because the officers had testified that in their experience narcotics had been found in certain kinds of envelopes and bottles. *Id.* at 478–79. Officer Jewell testified that he had been

assigned to vice for five years, that he was familiar with the area as one in which marijuana was sold and that he recognized the blunts as cigars used to smoke marijuana and the vanilla extract bottle as used to carry PCP. Officer Jewell's testimony, based on his own experience, was sufficient to support the trial court's factual finding that the officer recognized the objects as probable items of contraband.

**11.** The statement was not used at trial; however, it was used to impeach Hicks at the suppression hearing.

**12.** Hicks does not argue that his statement was taken in violation of *Miranda.* Moreover, he does not argue that his statement was the fruit of the unconstitutional seizure; therefore, we do not address these issues. *See Oregon v. Elstad,* 470 U.S. 298, 306, 105 S.Ct. 1285, 1291–92, 84 L.Ed.2d 222 (1985) (a confession obtained through custodial interrogation after illegal arrest is excludable as evidence absent intervening events sufficient to purge the primary taint).

The trial court's determination that Hicks was not under the influence of drugs is supported by the evidence. According to the officer, he did not appear to be under the influence of drugs, and Hicks testified that he had no drugs on the day in question and did not know how his prior drug usage affected him. He was given a full advice of *Miranda* rights, which he waived in writing two times. He does not dispute the validity of his *Miranda* waiver. During the interview, Hicks never indicated that he wanted to stop talking. There was no evidence that Sergeant Neill did anything to intimidate him at the station. The trial court credited the officer's testimony that he did not have a gun, and Hicks admitted that he did not feel pressured to make a statement. Under the totality of the circumstances, it does not appear that Hicks' will was overborne or that his statement was obtained by coercion. *See McIntyre v. United States*, 634 A.2d 940, 944 (D.C.1993).

Hicks argues that Sergeant Neill made an offer of leniency by telling him that his statement would help him. He contends that the sergeant's statement led him to believe that his cooperation would benefit him. Informing a defendant that cooperation could lead to more lenient treatment is not sufficiently coercive to make a statement involuntary. *United States v. Thomas*, 595 A.2d 980, 982 (D.C.1991).

Finally, we are not persuaded that the trial court erred in rejecting Hicks' claim that his statement was involuntary because he was fearful and intimidated by being arrested and transported to the police station. Hicks admitted that he did not feel pressured to make the statement by the police at the station. There was testimony that the police did not have weapons present when interviewing him. He received his *Miranda* warnings and waived his rights thereunder, hoping to help himself. Considered separately or in combination, the reasons advanced by Hicks in support of his claim that his statement was involuntary demonstrates no error in the trial court's determination that the statement was not coerced. Under the totality of the circumstances, the trial court's ruling is supported by the evidence. *See McIntyre, supra*, 634 A.2d at 944.

For the foregoing reasons, the judgment of conviction appealed from hereby is

*Reversed.*