SULLIVAN, Associate Judge, concurs in the result.

**Michael W. SPINNER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–453.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1992.

Decided Dec. 30, 1992.

Roy R. Martinez, appointed by this court, for appellant.

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Thomas C. Black, Lori Green and Julie Grohovsky Weidenbruch, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FARRELL and KING, Associate Judges.

ROGERS, Chief Judge:

Appellant Michael W. Spinner appeals his convictions by a jury of possession with intent to distribute cocaine and possession

of drug paraphernalia, D.C.Code §§ 33–541(a)(1), –603(a)(1988 Repl.), on the grounds that the trial judge erred by denying his motion to suppress physical evidence taken from his person and a vehicle he had driven, and by denying his motion for judgment of acquittal. We affirm.

I

At the suppression hearing, the government's evidence showed that on October 22, 1990, around 1:30 p.m., as police officers Francis Jenkins, Jr., and John J. Harling, in plain clothes, came out of an alley, they saw appellant standing outside of 2100 Fendall Street, an apartment building in Southeast Washington. Standing about five· or ten feet in front of appellant was Michael Anderson. When the officers came within 20 feet of the two men, appellant told Anderson to "go serve those guys" and made a pointing hand motion. Anderson began walking towards the plain clothes officers but he turned, when he apparently noticed a police radio in Officer Jenkins' hand, and put several small white objects in his mouth which the officer believed was cocaine. Officer Harling stopped Anderson and told him to spit it out, and he spit out five bags of drugs. Both appellant and Anderson were arrested and searched.

The police found on appellant a set of Acura car keys, a razor blade and an empty plastic bag with white powder residue. Officer Jenkins, who recovered the car keys, asked appellant if he owned a car. Appellant replied that he did not own a car, but he was driving one.[1] Jenkins looked down the street and saw a blue Acura parked on the next block, "maybe two cars back." Based on his twenty-three years' experience as a police officer, Jenkins knew that drug dealers in Southeast Washington, D.C. often used their cars "to stash their narcotics." The officer walked to the Acura in the 2000 block of Fendall Street, looked through the car window and saw "a large amount of cash" sticking out of the pouch on the back of the passenger seat. The two officers proceeded to open the car with the keys found on appellant and recovered $4,921 in paper cash currency.[2]

Appellant's only witness at the motions hearing was Shannon Burroughs, who testified that she was looking out of a hallway window over the front entrance of the apartment building (having come to visit a friend) when appellant was arrested. Just before this she had seen appellant at the front steps of the apartment building talking and laughing with a woman; she did not hear or see appellant speak to anyone else while she was there. Two other men were in the hallway of the apartment building. Someone said something about police, and one of the men ran into an apartment and the other man ran out of the door. Ms. Burroughs testified that one of the men had been making a sale (of drugs, she guessed), to the other man. Ms. Burroughs saw the police recover only keys and a piece of paper from appellant, but not a razor or plastic bags.

The officer conceded that appellant's response that he was driving a car was part of the reason that he went to see what was in the car. A question by the judge clarified that appellant did not tell the officer where the car was or anything about the nature of his participation in selling drugs. At trial the government did not offer evidence of appellant's response to the question whether he had a car, but the fact was brought out on cross examination by his counsel.

1. Officer Jenkins was later recalled to the witness stand during the motions hearing. He responded affirmatively to the trial judge's question, "Did you ask [appellant] where his car was?" In response to a question whether he understood by appellant's answer that the keys he had recovered from appellant's pants were to the car that he was driving, the officer said, "when I got the keys and when I saw the car, I didn't know if the same car matched the keys or not. Then I looked inside and I saw money, and I assumed it was the car. I tried the keys and the keys opened the door." The officer explained that as a result of his experience in this neighborhood, if people who sell drugs have a car "they usually stash drugs in that vehicle." The officer said that after finding the keys he wanted to find out if appellant had a car.

2. At trial, there was testimony that the police also found a paper with appellant's name on it and another paper indicating that the car was owned by Valentino Cooke.

## II

Appellant contends that the trial judge erred by denying the motion to suppress the property taken from his person because the police lacked reasonable suspicion for a Terry[3] stop or probable cause for a search. Because appellant was arrested when Officer Jenkins apprehended him, the only issue is whether the police had probable cause to arrest him. Probable cause exists where " 'the facts and circumstances within the [police officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man [or woman] of reasonable caution in the belief that' an offense has been or is being committed." *Price v. United States*, 429 A.2d 514, 516 (D.C.1981) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). We find no error by the trial judge in denying appellant's motion to suppress the physical evidence. *See Brown v. United States*, 590 A.2d 1008, 1020 (D.C.1991); *United States v. McCarthy*, 448 A.2d 267, 269 (D.C.1989).

The trial judge credited the officer's testimony that he heard appellant direct Anderson to "go serve those guys." When this evidence is added to the evidence of Anderson's behavior—approaching the officers, and, upon seeing the police radio, putting the five white bags into his mouth which the officer, based on his experience, believed were narcotics—a reasonable person in the officer's position could believe that an offense had been or was about to be committed. *See McCarthy, supra,* 448 A.2d at 270 (probable cause found where experienced vice officer in high narcotics area saw object appearing to be a hand-rolled marihuana cigarette in car ashtray and suspects sorting through the ashtray); *Peterkin v. United States*, 281 A.2d 567, 568 (D.C.1971) (standard for probable cause is that of a reasonably prudent police officer, drawing on his experience). Therefore, because the police had probable cause to arrest appellant, the search of his person incident to the arrest was valid. *See New York v. Belton*, 453 U.S. 454, 461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *In re: E.G.*, 482 A.2d 1243, 1247 (D.C.1984).

Appellant's contention, that the trial judge erred by denying the motion to suppress the physical evidence from the car as the fruit of the poisonous tree, likewise fails.[4] Although this court has not decided the question whether or not the nontestimonial fruits of a *Miranda*[5] violation are subject to the exclusionary rule, and appellant's statement that he was driving a car was taken from him before he was advised of his *Miranda* rights, that question does not have to be reached if the object in question was "arrived at by an independent source." *Derrington, supra* note 4, 488 A.2d at 1330.

In the instant case, Officer Jenkins was lawfully in possession of the car keys found on appellant. The officer recognized the keys belonged to an Acura car and based on his experience he knew that drug sellers in the area often worked with a car. Jenkins found an Acura car parked in the next block. In *Nix v. Williams*, 467 U.S. 431, 449, 104 S.Ct. 2501, 2511–12, 81 L.Ed.2d 377 (1984), the Supreme Court, ap-

---

3. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

4. The government maintains that at the motions hearing appellant argued only that the statement and money should be suppressed because he had not been advised of his *Miranda* rights after being arrested, and that he did not expressly argue that the search of the car was a "fruit" or that the exclusionary rule should be applied to non-testimonial evidence recovered subsequent to a *Miranda* violation. Therefore, it maintains that, "to the extent the issue was raised at all, the proper standard of review is constitutional harmless error," citing *Derrington v. United States*, 488 A.2d 1314, 1330 (D.C.1985); *see Lewis v. United States*, 483 A.2d 1125, 1130, 1131 (D.C.1984) (voluntary statement). The transcript of the suppression hearing makes clear, however, that defense counsel sought to show that Officer Jenkins searched the car only because appellant had told him he was driving a car to which the car keys found in appellant's pocket belonged. The defense claim, albeit without legal citation to the trial judge, was that any discovery of the money was tainted, and not independently found.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

plying the inevitable discovery doctrine, upheld the trial court's finding that searchers would have located a child's body in a ditch during a large-scale search over several miles even if the defendant had not first led the police to the body through admissions obtained in violation of his Sixth Amendment rights. So too, the trial judge here could properly conclude that the discovery was inevitable. Contrary to appellant's contention that the discovery of the money was based on appellant's response to Officer Jenkins' question whether he owned a car, the trial judge noted that Officer Jenkins never asked appellant where the car was or about the nature of his participation in selling drugs. Based on the officer's testimony, which the judge credited, the judge could conclude that the officer's experience with drug dealers in that part of the city was an independent source of information, providing him with reason to suspect that the Acura car keys found on appellant might belong to a car that appellant was using in connection with his drug distribution operation. While appellant's response informed the officer that appellant was using a car, and in that sense the response influenced the officers' conduct, it cannot reasonably be argued under the circumstances that but for appellant's response the police would not have discovered the Acura and the money inside. *See Nix v. Williams, supra,* 467 U.S. at 444, 104 S.Ct. at 2509 (government need only show by a preponderance of the evidence that the information "ultimately or inevitably would have been discovered by lawful means").

Having independently found the car, the police had probable cause to search it because Officer Jenkins had found the Acura car key on someone he had arrested for distributing drugs, and upon looking through the car window he could see "a large amount of cash sticking out of the back pouch." Although, at trial, the officer conceded that he did not see all of the money, in view of the large amount of money and the fact that it was in the form of paper currency, there is no basis on which to conclude that the officer saw any-

thing other than a considerable amount of paper currency sticking out of the seat pocket, and appellant does not argue to the contrary.[6] The police could also reasonably conclude that the sellers would stash the proceeds of the drug sales in their cars as well as the drugs. *See Carroll v. United States,* 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) ("officers were entitled to use their reasoning facilities upon all the facts of which they had previous knowledge in respect to the defendants"). Consequently, it follows that the police could search the car. *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985) ("vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search").

Accordingly, we hold that the trial judge did not err in denying the motion to suppress the money.

### III

Finally, appellant's challenge to the sufficiency of the evidence is meritless.

Viewing the evidence, as we must, in the light most favorable to the government, *see Curry v. United States,* 520 A.2d 255, 263 (D.C.1987), the jury could reasonably find that appellant intended to distribute cocaine. The government's evidence showed that appellant, upon seeing the two plainclothes police officers, told Anderson to "go serve those guys," pointing in their direction. Anderson had immediately started walking toward the officers, then stopped and put several small white objects into his mouth which the officer thought was cocaine. Upon being arrested, appellant was found in possession of a razor and a plastic bag with a white residue in it as well as the keys to an Acura car in which nearly $5,000 cash was stashed in a seat pouch pocket. There was expert testimony at trial about the roles played by appellant and Anderson, the uses made of the property found on them, and that the crack cocaine was a usable amount and packaged

---

**6.** Hence, this appeal does not present the question of whether the officers could have searched the car had they seen only some loose change or a few dollar bills inside of the car.

for individual sale.[7] Thus, there was sufficient evidence for a reasonable jury to find that appellant was in constructive possession of the five bags of cocaine that Anderson had put into his mouth as well as the money in the car. *See Wheeler v. United States,* 494 A.2d 170, 173 (D.C. 1985); *Carpenter v. United States,* 475 A.2d 369, 374–75 (D.C.1984); *United States v. Hubbard,* 429 A.2d 1334, 1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). *See also Thompson v. United States,* 567 A.2d 907 (D.C.1989). That the defense presented contrary evidence created a conflict that was for the jury to resolve; so too was the weight to be given to the absence of any mention in Officer Jenkins' police report that appellant had pointed at the officers upon telling Anderson to "go serve those guys."[8] *See Carter v. United States,* 591 A.2d 233, 234 (D.C.1991).

Accordingly, we affirm the judgments of conviction.

KING, Associate Judge, concurring:

I join the opinion authored by Chief Judge Rogers but I write separately to emphasize one point. The majority holds that "the police had probable cause to search [the car] because Officer Jenkins had found the Acura car keys on someone he had arrested for distributing drugs, *and* upon looking through the car window he could see 'a large amount of cash sticking out of the back pouch.'" *Ante* p. 179 (emphasis added). I agree that those facts are more than enough to establish probable cause. I join the majority opinion on the understanding that the majority is not holding that probable cause did not exist before the cash was spotted by the police. On facts very similar to those presented here, the Circuit Court held that probable cause to search a vehicle was present once the police learned that the defendant was engaged in drug trafficking, and the vehicle, which brought him to the scene, was located nearby. *United States v. Wider,* 293 U.S.App.D.C. 16, 19, 951 F.2d 1283, 1286 (1991). In this case, we need not decide whether probable cause existed before the cash was seen because, as noted, there was probable cause after its discovery, when the search was conducted. I do not read the majority opinion as deciding the issue of whether probable cause existed at the earlier point.

---

7. Detective Albert Young, who testified as an expert in narcotics use and distribution schemes, opined that the amount of crack cocaine seized from Anderson was a usable amount, and that the white powder on the razor blade recovered from appellant was crack cocaine. The detective explained that the plastic bags looked like the type that was used to package drugs for distribution, and that razor blades are used to chop off segments of a larger rock of crack cocaine so that segments can be sold individually. In response to a hypothetical question tracking the police testimony, Detective Young opined that a person acting as appellant was running the operation while the second person's function is to hold the drugs when they are on the street.

8. Appellant's defense was innocent presence. Several witnesses testified that they had been in or near the apartment house at 2100 Fendall Street, S.E., on October 22, 1990, around 1:30 p.m., and had seen appellant talking and laughing with a woman named Ann, who was standing on the top step of the apartment building. Both Shannon Burroughs and Mauricia Smith, who lived in the apartment building, testified that they did not see appellant talk to anyone other than the woman. Ms. Burroughs repeated her motions' testimony about the two other men, and Ms. Smith testified that she had initially seen the police with four or five guys and later saw a man approach appellant with a gun, and another man come from the side of the building; both talked to appellant and then searched him, removing keys and money from appellant's pockets and asking him where he got the drugs and money. Derrick Cousar and Richard Goines corroborated the testimony of the two female witnesses.

Anderson, the co-defendant, claimed that he did not know appellant and had never seen him before, and that appellant had not said anything to him on the day that they were arrested. He also testified that he had come to the apartment building to buy drugs for his personal use, and because the seller had advised him that the police were around he left the building, walking toward the alley in order to avoid the police who were frisking three men near the building. He stopped when he saw undercover policemen coming out of the alley with a police radio and he put the drugs in his mouth.