UNITED STATES, Appellant,

v.

Calvin L. BROWN, Appellee.

No. 97–CO–422.

District of Columbia Court of Appeals.

Argued Feb. 13, 1998.

Decided March 26, 1998.

Rachel Adelman Pierson, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, John D. Crabb, Jr., and Chrisellen R. Kolb, Assistant United States Attorneys, were on the brief, for appellant.

---

Sharon Styles–Anderson, with whom Cynthia Maisano, Law Student, was on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and KING, Associate Judges.

SCHWELB, Associate Judge:

The government appeals from an order granting in part Calvin L. Brown's pretrial motion to suppress tangible evidence. We reverse.

## I.

## THE EVIDENCE

Brown was charged with unlawful possession of marijuana with intent to distribute it. D.C.Code § 33–541(a)(1) (1993). The prosecution proposed to introduce at trial drugs seized from the trunk of a maroon Cadillac to which Brown had the keys. Brown filed a pretrial motion to suppress the drugs, as well as the keys to the Cadillac and $120 in cash seized from Brown's person and $250 in cash recovered from the passenger compartment of the car. The trial judge granted the motion with respect to the drugs seized from the trunk, but she declined to suppress the keys or cash recovered from Brown or from the passenger compartment of the car.

At the hearing on Brown's pretrial motion, Officer Torrence Smith of the Metropolitan Police Department testified that on August 28, 1996, at approximately 4:00 p.m., Smith and three other officers were on patrol in the area of the 1800 block of North Capitol St., N.W. According to Smith, Brown approached an unidentified man, who handed Brown a small object. Brown then walked to a grassy area nearby, picked up something from the ground, and tossed that object to the other man, who caught it and left.[1]

Officer Smith suspected that he had just witnessed a drug transaction, and he and his colleagues decided to investigate. The officers then split up; Smith and his partner, Officer Lovely, followed Brown, while Officers Goldberg and Ennis pursued the apparent buyer.

Smith testified that Brown walked to a maroon-colored Cadillac automobile, opened the trunk, "shuffle[d] around in the trunk" for ten to fifteen seconds, and then closed the trunk. Brown then entered the vehicle on the passenger side and bent down, half sitting and half kneeling, as though he was looking under the front passenger seat.

Meanwhile, the suspected buyer "picked up his pace a little bit [as though] he was trying to get away." As the man was leaving the area, he tossed something into some nearby bushes. Officers Goldberg and Ennis were unable to locate the object apparently discarded by the suspected purchaser. The officers briefly detained the man, but found no contraband on his person. The officers then released him without making a record of his identity, and they reported their observations to Officer Smith.

While Officers Goldberg and Ennis were dealing with Brown's apparent customer, Brown got out of the Cadillac. Officer Smith approached him and identified himself as a police officer. Smith told Brown that he wanted to talk to him. As the discussion between Smith and Brown was about to begin, Officer Goldberg contacted Smith over the radio and advised him that he (Officer Goldberg) had located what Goldberg believed to be Brown's stash. Specifically, Officer Goldberg reported that he had found two ziplock bags containing what appeared to be marijuana. These bags had been lying in the grassy area where Brown had previously picked up the object that he had tossed to the suspected buyer.

Upon receiving this information, Smith placed Brown under arrest. In a search of Brown's person incident to the arrest, Smith recovered the keys to the Cadillac, as well as $120 in cash. Smith then opened the trunk of the car and came upon a much larger stash: fifty-seven ziplock bags and three bundles in a closed, opaque bag, all containing what later proved to be marijuana. Officer Ennis next searched the interior com-

---

1. Smith was unable to identify either the object which the suspected buyer gave to Brown or the item which Brown tossed to the buyer.

partment of the car and recovered $250 in cash under the floor mat on the passenger side.

## II.

## LEGAL ANALYSIS

█ After both parties presented evidence at the hearing on Brown's pretrial motion to suppress, the trial judge delivered her oral decision. The judge stated that she credited the police testimony. She concluded that once the officers found Brown's stash, they had probable cause to arrest Brown and, incident to the arrest, to search both Brown's person and the passenger compartment of the Cadillac. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The judge suppressed the items seized from the trunk, however, concluding that the officers lacked probable cause to believe that the trunk was linked to the drug transaction or that there was contraband located in the trunk. In the judge's view, the case turned on "whether or not there's a reason to believe that the container, in this case we'll call it the trunk, contains drugs." This legal conclusion is the linchpin of the trial judge's ruling, and we review it *de novo. Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996); *United States v. Watson,* 697 A.2d 36, 38 (D.C.1997).

█ The officers initially observed Brown in an apparent drug transaction and, at least after they recovered his stash, they had probable cause to arrest him and to search his person incident to that arrest. *See, e.g., Coles v. United States,* 682 A.2d 167, 168 (D.C.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 751, 136 L.Ed.2d 688 (1997). The government contends that, on this record, the police were also authorized to search the trunk of the Cadillac. We agree.

After having made an apparent drug sale from the stash in the grassy area, Brown left the remainder of the stash on the ground and walked to the maroon Cadillac. Upon reaching the car, he engaged in brief activity both in the trunk and in the passenger compartment. Brown then got out of the car again. Officer Smith testified that, in his experience, drug dealers often "stash" drugs or proceeds of drug sales in automobiles. Common sense suggests that Brown's brief trip to the Cadillac was probably related to the activity in which he had just been engaging, namely, the distribution of marijuana. The short time frame within which the entire sequence of events occurred lends further support to the inference that there was a nexus between the Cadillac and the drug activity. The fact that Brown left two ziplock bags of marijuana in the grassy area corroborated this inference and permitted the police to infer that he would soon use the stash again to sell more drugs.

█ Under these circumstances, the police had probable cause to believe that marijuana, drug money, or both had been stashed in the vehicle. *See Spinner v. United States,* 618 A.2d 176, 179 (D.C.1992) ("[t]he police could also reasonably conclude that the sellers would stash the proceeds of the drug sales in their cars, as well as the drugs"); *see also id.* at 180 (King, J., concurring); *United States v. Wider,* 293 U.S.App. D.C. 16, 19, 951 F.2d 1283, 1286 (1991). Probable cause having been established, the officers were authorized to search the entire vehicle, including the trunk and the bag in the trunk. *California v. Acevedo,* 500 U.S. 565, 570–80, 111 S.Ct. 1982, 1986–91, 114 L.Ed.2d 619 (1991); *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).

The trial judge apparently grounded her decision on the belief that the government was required to establish a nexus between the trunk and the unlawful activity, and that a link between the vehicle and that activity was insufficient. Insofar as *Arkansas v. Sanders,* 442 U.S. 753, 763–66, 99 S.Ct. 2586, 2592–94, 61 L.Ed.2d 235 (1979), which Brown cited to the trial court, may previously have supported such a position, that aspect of the *Sanders* opinion is no longer sound law. *Acevedo, supra,* 500 U.S. at 579, 111 S.Ct. at 1990.

## III.

## CONCLUSION

For the foregoing reasons, the judgment is reversed, and the case is remanded with

instructions to deny in its entirety Brown's motion to suppress evidence.

*So ordered.*